## NICHOL v. THOMAS.

RECORD.—*Motion for New Trial.*—A motion for a new trial is a part of the record without being embraced in a bill of exceptions.

SAME.—*Bill of Exceptions.*—In the transcript of a record on appeal to the Supreme Court, immediately after the entry of the judgment, which was rendered on a certain day of the term at which the trial was had, was this entry: "And the defendant now presents to the court his bill of exceptions, which is signed by the court and filed, and is as follows." Then followed a bill of exceptions containing the evidence.

*Held,* that it was shown when the bill was filed, and that it was a part of the record.

UNSOUND MIND.—*Contract.*—*Evidence.*—On the trial of an action to set aside a deed of conveyance of real estate on account of the insanity of the grantor, evidence tending to prove his sanity or his insanity, previous or subsequent to the execution of the deed, including the record of a subsequent inquisition by which he was found to be insane, is admissible, as tending to show his mental condition at the time of the making of the contract.

REAL ESTATE.—*Action to Recover.*—*Pleading.*—*Equitable Title.*—*Instruction to Jury.*—Where a complaint for the recovery of the possession of real estate is in the usual form of a possessory action, not stating the nature of the plaintiff's title, or where the recovery is sought upon the ground that the plaintiff was insane at the time of the execution of the deed of conveyance under which the defendant claims title, there can be no recovery upon an equitable title; and in such a case, an instruction to the jury treating of the doctrine of trusts was outside of the issues and calculated to mislead the jury, and therefore erroneous.

UNSOUND MIND.—*Contract.*—*Disaffirmance.*—A deed of conveyance of real estate executed by an insane person, apparently of sound mind, before office found, is not void but merely voidable, and vests the title in the grantee, subject to the right of the grantor, upon restoration of his reason, or of his guardian, to affirm or disaffirm the contract. Such disaffirmance must precede the bringing of an action to dispossess the grantee, but such action may be brought without first restoring the consideration to the grantee.

From the Hamilton Circuit Court.

*D. Moss, F. M. Trissal* and *W. Garver,* for appellant.

*T. J. Kane, A. F. Shirts, J. W. Evans* and *R. R. Stephenson,* for appellee.

BUSKIRK, J.—This was an action by the appellee, as guardian of George Nichol, Sen., against the appellant, to recover

the possession of land and to quiet the title thereto. The
complaint was in two paragraphs.

The first paragraph alleges that the appellee is the duly
and legally appointed guardian of George Nichol, Sen., an
insane person; that said George Nichol is the owner of the
following real estate, situate in Hamilton county, Indiana,
to wit: the east half of the south-west quarter of section 31,
township 18, range 3; that the defendant has the possession
of the same without right, and for seven years last past has
unlawfully kept said George Nichol out of possession of the
same. The relief demanded in this paragraph is judgment
for possession and one thousand dollars damages.

· The second paragraph was as follows: ;

" For a second and further cause of action, the plaintiff says
that, on or about the —— day of ——, in the year 1865, the
said George Nichol conveyed the following lands, to wit:
the east half of the south-west quarter of section 31, town-
ship 18, range 3, in Hamilton county, Indiana, to George
Nichol and Henry Nichol, who were sons of the plaintiff
Nichol; that he afterwards conveyed the same to Henry
Nichol. The said Henry Nichol conveyed or transferred
his interest in said lands to the defendant, William Nichol,
soon after the same had been transferred to the said George
and Henry Nichol; that the said defendant, William Nichol,
soon after the said transfer to him by the said Henry, took
possession of said lands and has ever since retained posses-
sion thereof, and claims to be the owner of the same; that
said George Nichol, the plaintiff's ward herein, was, at the
time he executed said deeds, insane and wholly unable to
make a binding contract; and the plaintiff further avers that
his said ward has no other estate except said lands and a
house and lot in Zionsville, Indiana, upon which to rely for
a support; that the said George Nichol makes no claim
whatever to said lands, on account of the insanity of the
ward of said plaintiff at the time of the execution of said
deeds, and is ready and willing to re-convey his interest in
the same; that the defendant, William Nichol, at the time

he received his said title from the said Henry Nichol, had full knowledge of the insanity of the said George Nichol, ward of the plaintiff. Wherefore the plaintiff asks that said conveyance so made be set aside and held for naught. A copy of which deeds of conveyance are filed herewith; and as the claim of the defendant, William Nichol, is a cloud upon the title of ward of the plaintiff, he asks that the same be removed, and that his title to said lands be quieted and set at rest, and for all other proper relief."

The defendant answered by the general denial.

The case was tried by a jury, which resulted in a verdict, which is in these words, to wit: "We, the jury, find for the plaintiff, and assess the damages at one cent; and we believe the deeds to be deeds of trust. H. G. Finch, foreman." The court, at the request of the defendant, propounded the following special interrogatory to the jury, viz: "1st. Did not George Nichol, Sen., and Margaret Nichol, his wife, convey the real estate mentioned in the complaint to Henry Nichol, on the 4th day of June, 1867? and did not Henry Nichol convey the same real estate to the defendant, William A. Nichol, on the 20th day of June, 1867?" To this interrogatory the following answer was returned by the jury, viz: "To the first interrogatory we answer yes, but believe that George Nichol, Sen., conveyed it through compulsion, and that Margaret Nichol made the conveyance of her own choice. To the second interrogatory we answer yes." A special bill of exceptions shows that, when the verdict and special finding in answer to the interrogatory were returned into court and read by the judge in the hearing of the jury and counsel for each of the parties to the cause, the defendant, while the jury were together, and before they were discharged from the consideration of the case, demanded that the jury be not discharged, but kept together until the verdict and special finding were made in proper form, and the answer to the special interrogatory be made responsive and unequivocal. Which request the court refused, and received the verdict and special finding, and discharged the

jury from the further consideration of the cause; to which the defendant excepted at the time.

The appellant then moved the court for judgment on the special finding of the jury in answer to the interrogatory propounded by the defendant, notwithstanding the general verdict. This motion was overruled and the ruling excepted to at the time.

The defendant filed a motion for a new trial, assigning eleven causes, as follows:

1. For error of law occurring at the trial, in the admission of the testimony of the following named witnesses upon the subject of the condition of the mind of George Nichol, Sen., subsequent to the execution of the deed mentioned in the complaint (which was shown to have been executed on the 10th day of October, 1865), to wit: the testimony of Frank Imbler, Martha C. Thomas, John DeBruler, Lewis Gregory, Mr. Buchanan, Joseph Essig, William Breedlove and Oliver H. Nichol, to the introduction of whose said testimony, upon the subject aforesaid, the defendant objected at the time, and said objections were overruled, to which ruling of the court the defendant excepted at the time.

2. For error of law occurring at the trial of said cause, by the court refusing to permit the defendant to prove by Dr. J. H. Mendenhall, a physician, the facts offered to be proved by said witness, as shown by an offer to prove made at the time said witness was introduced, to which said refusal the defendant excepted at the time.

3. For error of law occurring at the trial of said cause, in the court permitting the plaintiff to introduce the record of the proceedings of the common pleas court of Hamilton county, showing that George Nichol was adjudged a person of unsound mind in August, 1872, to the introduction of which the defendant objected at the time, which objection the court overruled, to which ruling the defendant excepted at the time.

4. The verdict of the jury is not sustained by the evidence.

5. The verdict of the jury is not sustained by sufficient evidence, and is contrary to law.

6. Error of the court in refusing the demand of the defendant that the verdict and special finding of the jury be made in proper form, and the answer to the interrogatory made full, responsive and unequivocal.

7. For misconduct of the prevailing party in said cause, in this, to wit, that the plaintiff, by his attorney, after the jury had been sworn to try the issues in the cause, and after the defendant had concluded his testimony, without leave of court, and without the knowledge or consent of the defendant, made a material new amendment and alteration in the complaint, as shown by the affidavits of F. M. Trissal and William Garver, filed in support of this reason for a new trial.

8. For error of the court in refusing to give the third instruction, as asked for by the defendant, to which refusal the defendant excepted at the time.

9. For error of the court in giving the third instruction to the jury.

10. For error of the court in giving the sixth instruction to the jury.

11. For error in giving the seventh and eighth instructions to the jury.

This motion for a new trial the court overruled, to which ruling the appellant excepted at the time.

The facts offered to be proved by Dr. J. H. Mendenhall, mentioned in the second reason assigned for a new trial, are shown by the offer to prove made at the time, and are as follows:

" That the witness, a practising physician, had known George Nichol, Sen., for four years past, has had opportunities, and has, during said period, observed the manners and habits of said George Nichol. Has observed him during the periods of excitement and stupor or quiet spells detailed by the witnesses in said cause; that he has treated said George Nichol during said past four years, and has known the con-

dition of his mind during that time; * * * and that, in the opinion of the witness, from his own observations and as a medical expert, said George Nichol is, and for said four years has been, a person of sound mind."

The deed in controversy was executed on the 10th day of October, 1865. It is thus shown that the inquisition of sanity was had some seven years subsequent to the execution of such deed.

The instructions given by the court, to the giving of which the defendant objected at the time, are as follows:

"3. A man may be sane upon all other subjects, and yet afflicted with a delusion upon one which would amount to insanity upon that one. An insane delusion exists when a person conceives something to exist, which, in fact, has no existence, and he is incapable of being reasoned out of this false belief. Such a delusion is partial insanity. And if the deed in question is the offspring of such a delusion, or of general insanity, it is invalid. But if you believe from the evidence that George Nichol was not acting under such a delusion, and not influenced by such an one, or under general insanity, when he executed the deed, it should not be set aside. In other words, if such an insane delusion existed, or general insanity existed, the deed in question must have been the offspring of such insane delusion, or of the general insanity, if it existed at the time, or it should not be set aside.

"6. The real question for you to determine in this case is, whether George Nichol, Sen., at the time he executed the deed, in Rushville, Indiana, was insane, and whether he was insane at the time he executed the deed to Henry Nichol; and, if insane at these times, you should find for the plaintiff; but, if not insane, then you should find for the defendant. And, in determining the question whether he was insane or not, you have a right to take into consideration his conduct and conversations, as detailed by the witnesses, both before and after the execution of these deeds, as well as the facts that occurred at the time of their execution, together

with the opinions of the witnesses on that subject who have testified before you, and the conduct and opinions of the defendant himself, as detailed by the witnesses, and from all these to draw your conclusions. If, on weighing all these facts and circumstances, you think they preponderate in favor of the conclusion that he was of unsound mind, you should find for the plaintiff. If, on the other hand, after considering all these facts and circumstances, you think he was not insane, then you should find for the defendant. The fact that George Nichol, Sen., has, by the proper tribunal, been found insane, if you so find, is a circumstance you may take into consideration in determining whether he was insane or not, at the time of the execution of the deeds referred to

" 7. If you find from the evidence that the deed executed by George Nichol, Sen., at Rushville, Indiana, to George and Henry Nichol, was made in trust to them, to be by them kept for the purpose of keeping George Nichol, Sen., from squandering the land, and that this trust was accepted by George and Henry Nichol; and if you further find that the other deed executed by George Nichol, Sen., to Henry Nichol was executed to carry out the same trust, or was made at a time when George Nichol, Sen., was insane, in that event you should find for the plaintiff. While insanity is not to be presumed, yet, when insanity is once shown to exist, its continuance is presumed, and, to avoid its results, the defendant must show, by a preponderance of the evidence, that the insanity had ceased to exist at the time the deed was executed, if the insanity existed before that time.

" 8. In this case, if you find that George Nichol, at the time of the execution of the deeds by him, referred to in the case, was insane, then it is no defence to the case that the defendant had paid the full value of the land, if you find that he did pay the full value; but, in that event, the deeds are void."

The appellant has assigned for error the overruling of the motion for judgment in his favor upon the answers to the

Nichol *v*. Thomas.

interrogatory submitted by him, notwithstanding the general verdict, and the overruling the motion for a new trial.

We think the court committed no error in overruling the motion for judgment on the special verdict, for the reason that there is no inconsistency between the special and general verdict.

On the 10th day of October, 1865, George Nichol, Sen., and his wife conveyed the land in controversy to George and Henry Nichol, two of his sons, for and in consideration of the sum of eighteen hundred dollars. At the same time, a written agreement was entered into between the parties to such deed, which recited the conveyance of said lands for the consideration expressed in the deed; that said lands were of the actual value of thirty-six hundred dollars; that the said George Nichol, Sen., and his wife were separated; and that said George and Henry, in addition to the consideration expressed in the deed, obligated themselves to support John, Milton and Martha Nichol, minor children of the said grantors in said deed, until they arrived at the age of twenty-one years. The said George and Henry, at the same time, executed to their father a mortgage on said premises to secure the payment of the purchase-money mentioned in said deed, and the performance of the condition mentioned in said agreement. These instruments were executed at Rushville, in this State, where George Nichol, Sen., was then residing with his brother.

The appellant testified that he was a full partner with his brothers, George and Henry, in the purchase of the farm, and went with them to Rushville, but kept himself concealed at the hotel, and did not have his name inserted in the deed and other instruments, because his uncle was hostile to him and would have prevented the sale, if it had been known that he was interested therein. The appellant was in possession of the farm at the time of the sale, under a contract with his father, and he remained in possession afterward.

On the 4th day of June, 1867, the said George Nichol, Sen., he having returned to his farm in Hamilton county, entered satisfaction of the above mentioned mortgage, annulled the agreement for the support of his said three minor children, and conveyed the land in dispute to his said son Henry, for the consideration of eighteen hundred dollars.

On the 20th day of June, 1867, the said Henry conveyed the said premises to the appellant, for the consideration of one dollar. At the time the second deed to Henry was made, the first deed to George and Henry had never been annulled or set aside, but was in full force and effect.

On the 19th day of August, 1869, George Nichol, Jun., and wife conveyed the said premises to the appellant, for the consideration of one dollar.

It is fully shown by the evidence in the cause that the appellant possessed full and accurate knowledge of the mental condition of his father at the times when these several deeds were made. If the first deed was valid, the second was a nullity. If the first vested the title in George and Henry, the grantor could not divest the title of George by conveying it to Henry. If the first deed was voidable for the want of mental capacity, it must have been avoided and set aside in some mode known to the law, before the grantor was authorized to make another conveyance. If the first conveyance was absolutely void, a question to be considered further on, on account of the insanity of the grantor, the second deed to Henry must be held void for the same reason; for it is obvious from the evidence that the mind of the grantor was in a worse condition at the date of the second conveyance than it was when the first was made. The jury found, in answer to interrogatories submitted, that George Nichol, Sen., conveyed the land to Henry on the 4th of June, 1867, and that Henry conveyed it to William A., the appellant, on 20th of the same month. This finding is not, in view of the other facts in the record, inconsistent with, and cannot control the general verdict; for it is quite plain that whatever title Henry had to the land in controversy, he acquired by

virtue of the first deed from the grantor and the subsequent deed from George Nichol, Jun.

We proceed to consider whether the court erred in overruling the motion for a new trial. There are, however, two preliminary questions which have to be disposed of before considering the questions arising on the overruling of the motion for a new trial.

1. It is insisted by counsel for appellee that the motion for a new trial is not properly in the record, for the reason that it is not embodied in the bill of exceptions. There is nothing in the objection. A motion for a new trial is a part of the record without being embraced in a bill of exceptions. A motion for a new trial, the ruling thereon, and the exception taken thereto are embraced under the phrase, "all proper entries made by the clerk," as used in section 559, 2 G. & H. 273. Buskirk's Practice, 254.

2. It is claimed that the bill of exceptions is not a part of the record, because it is not shown when it was filed. The objection is not sustained by the record. The judgment was rendered on the 25th day of the term, and immediately following it is this entry: "And the defendant now presents to the court his bill of exceptions, which is signed by the court and filed, and is as follows." Then follows the bill of exceptions containing the evidence. The bill was signed and filed in term, and is a part of the record.

The first reason for a new trial relates to the admission of evidence tending to prove the insanity of George Nichol, Sen., subsequent to the execution of the deed on the 10th day of October, 1865. We think counsel for appellant are mistaken in their assumption that there was no evidence of the insanity of the grantor at the time of making the deed in question. The evidence of ten or twelve of the witnesses introduced by the appellee, and seven or eight of those introduced by the appellant, very strongly tended to prove that the grantor was, at the time of making said deed, and for fifteen or twenty years prior thereto had been, insane. The inquiry as to the mental condition of the grantor should,

of course, be directed to the time of making the deed. His condition at that time is the question to be decided, and, as tending to prove that fact, his previous conduct and declarations are admissible; and so, by the weight of authority and upon principle, are subsequent acts and declarations, when they denote the mental fact to be proved.

*Shailer* v. *Bumstead*, 99 Mass. 112; *Provis* v. *Reed*, 5 Bing. 435; *Marston* v. *Roe*, 8 Ad. & E. 14; *Jackson* v. *Kniffen*, 2 Johns. 31; *Waterman* v. *Whitney*, 1 Kern. 157; *Comstock* v. *Hadlyme*, 8 Conn. 254; *Moritz* v. *Brough*, 16 S. & R. 403; *McTaggart* v. *Thompson*, 14 Penn. St. 149; *Boylan* v. *Meeker*, 4 Dutcher, 274; *Cawthorn* v. *Haynes*, 24 Mo. 236; 3 White & Tud. Lead. Cas. (3d Am. ed.), 503, note; 1 Redfield on Wills, 551, 561; *Rush* v. *Megee*, 36 Ind. 69.

We think the court committed no error in admitting evidence on the subject of the mental condition of the grantor subsequent to the execution of the deed in question.

The views expressed above dispose of the second and third reasons for a new trial.

The evidence of Dr. Mendenhall was improperly excluded, and the record of the inquisition was properly admitted.

The giving of the third, sixth, seventh and eighth instructions is complained of by counsel for appellant. We think the third and sixth properly express the law. *Rush* v. *Megee, supra.*

So much of the seventh instruction as treats of the doctrine of trust was outside of the issues. The first paragraph of the complaint was in the usual form of a possessory action. It contained no averment of a trust. The facts showing the nature of the title of the appellee were not stated in the complaint. He sought to recover upon a legal title. In such case a recovery cannot be had upon an equitable title. *Stehman* v. *Crull*, 26 Ind. 436; *Rowe* v. *Beckett*, 30 Ind. 154; *Brown* v. *Freed*, 43 Ind. 253.

The second paragraph of the complaint sought a recovery upon the ground that the grantor was insane at the time the deed was made. The title relied upon in this paragraph

was a legal, and not an equitable one.  *Brown* v. *Freed,* *supra.*  Such instruction was calculated to mislead the jury.

Several very important questions are presented by the eighth instruction.  By that the jury were instructed that the deed of an insane man, before office found, was absolutely void.  This charge was erroneous.  The deed of an insane man, before office found, is voidable merely, and may be ratified or disaffirmed by the grantor after he becomes sane.  The deed of one who has been found to be insane, and had a guardian appointed, is absolutely void.  This proceeds upon the ground that the inquisition and appointment of a guardian are conclusive evidence that such person is incapable of contracting, and is notice to the world.  The grantor, at the time of making the deed in question, had not been adjudged to be of unsound mind, and was apparently of sound mind, and his contracts were voidable merely. *Musselman* v. *Cravens,* 47 Ind. 1, and authorities cited; *Wait* v. *Maxwell,* 5 Pick. 217; *Arnold* v. *Richmond Iron Works,* 1 Gray, 434; *Gibson* v. *Soper,* 6 Gray, 279; *Allis* v. *Billings,* 6 Met. 415; *Jackson* v. *Gumaer,* 2 Cow. 552.

The deed in question, being voidable merely, vested the title in the grantee, subject to the right of the grantor, upon the restoration of his reason, or of his guardian, to disaffirm the contract.  The grantor remained insane until he was judicially declared to be insane.  He, of course, possessed no power either to affirm or disaffirm his conveyance.  His guardian possessed the power to affirm or disaffirm, but he did neither.  The deed having vested the title in the grantee, he could not be dispossessed until the contract was disaffirmed.  The bringing of this action did not amount to disaffirmance.  The disaffirmance must precede the bringing of the action.  The conveyance of an insane person, but who is apparently sane, stands, in all substantial respects, as the conveyance of an infant.  As to what will amount to a disaffirmance, see authorities immediately hereinafter cited: *Law* v. *Long,* 41 Ind. 586; *Scranton* v. *Stewart,* 52 Ind. 68; *Tucker* v. *Moreland,* 10 Pet. 58.

An insane person, or his guardian, may bring an action to recover land, of which a deed was made by him while insane, which deed has not since been ratified or affirmed, without first restoring the consideration to the grantee. *Gibson* v. *Soper*, 6 Gray, 279; *Foss* v. *Hildreth*, 10 Allen, 76; 1 Chitty on Cont., 11th ed., 191, note (t).

The eighth instruction is clearly erroneous. The court should have charged the jury that the deed of the grantor was voidable only; that there should have been a disaffirmance of the contract before the action was brought; but that such contract might be disaffirmed, and the land recovered, without first restoring the purchase-money. For this erroneous instruction, as well as for the exclusion of the evidence of Dr. Mendenhall, and the giving of the first part of the seventh instruction, the judgment must be reversed.

There are other questions discussed by counsel, but as they are not likely to arise upon another trial, they need not now be considered.

The judgment is reversed, with costs; and the cause is remanded for a new trial, in accordance with this opinion.