Fay v. Burditt.

No. 8556.

FAY v. BURDITT.

CONTRACT.—*Unsoundness of Mind.*—The contract of an insane person, whose disability has not been judicially determined, is voidable only, and not void.

SAME.—*Disaffirmance.*— *When Contract of Insane Person will not be Set Aside.*— An insane person, unless his insanity had been judicially declared before the contract was made, has not the same unqualified right, as an infant or married woman, to disaffirm his contract; and when there is nothing in his appearance, conversation or conduct to indicate his mental incapacity, and he makes a contract with one without notice of his condition, which is in itself fair and just, and such contract becomes so far executed that the parties can not be placed *in statu quo*, the contract will not be set aside.

SAME.— *Chattel Mortgage.*— *Title to Property.*— *Possession.*— *Demand.*— *Replevin.*—A chattel mortgage executed by an insane person, whose mental unsoundness has not been judicially determined, will vest the title, and, after default in the condition, the right of possession of the chattel in the mortgagee; and actual possession obtained under it can not be made wrongful without a disaffirmance. In such case, there must be, therefore, a disaffirmance before an action can be maintained to recover the chattel from the mortgagee.

SAME.—*Semble,* that a party to a contract should not be allowed to disaffirm on account of insanity, without restoring what he had received, or offering to make compensation therefor, if the other party acted in good faith, and the contract itself was fair.

SAME.—*Instructions.*—*Burden of Proof.*—*Shifting of Burden.*—In an action by the mortgagor of a chattel, to recover possession on the ground of his insanity when he made the mortgage, it was not error to instruct "That the plaintiff must have established, by a preponderance of evidence, that he was insane at the time he executed the note and mortgage," nor in refusing to instruct "That if the plaintiff had established by a preponderance of the evidence, that he was of unsound mind prior to the making of the chattel mortgage, then the burden of proof is cast upon the defendant to show that the plaintiff was of sound mind at the time," etc. The burden of proving insanity is on the one who alleges it.

*Quære,* whether it is quite accurate to say that the burden of a particular affirmative issue ever shifts in the course of the trial from one party to the other.

From the Benton Circuit Court.

*M. H. Walker, D. Smith* and *I. H. Phares,* for appellant. *R. C. Gregory* and *W. B. Gregory,* for appellee.

WOODS, J.—Complaint in two paragraphs for the wrongful taking and detention of personal property.

The first paragraph is in the common form and need not be further noticed. The principal questions in the case arise upon the alleged error of the circuit court in overruling the appellant's demurrer for want of facts to the second paragraph of answer to the second paragraph of the complaint.

There is a third paragraph which alleges an unlawful conversion of the property, but no question arises under it.

The following are the substantial averments of the second paragraph, to wit: That the plaintiff is the owner and lawfully entitled to the following described personal property (description), which has not been taken by virtue of any writ, etc.; but the same has been wrongfully taken and is unlawfully detained by the defendant under color of a pretended sham and void chattel mortgage, executed by this plaintiff to the defendant, on the 7th day of January, 1878, to secure the payment of a promissory note of the same date, for one hundred and twenty dollars, payable one year after date; that the plaintiff, when he made the note and mortgage, was of unsound mind and wholly incapable of understanding, and

did not understand the nature, purport, contents and mean-
ing of said instruments; that he has now so far recovered
the use of his mental faculties as to be able to comprehend
the ordinary affairs of life, and to make contracts and to
maintain and prosecute this suit in his own behalf; that the
defendant well knew that the plaintiff was " utterly insane "
at the time he made said note and mortgage to her, but, for
the fraudulent purpose of obtaining his signature to said pa-
pers, she combined and conspired with one Lamb, and they
by fraud and false representations procured the plaintiff to
sign and deliver the note and mortgage, which fraud and
false representations were, that the note and mortgage were
without consideration, and that the defendant threatened to
take and drive away said property and appropriate it to her
own use, unless the plaintiff complied with her request, and
have him sent to the insane asylum; and but for these things,
and his mental unsoundness and incapacity to understand the
ordinary affairs of life, he would not have signed the note
and mortgage; that they were given without any considera-
tion whatever, and by reason of the premises are invalid.
Wherefore he prays that he may recover said property, or if
the defendant has disposed of it, then its value.

The answer in question is to the effect, that if the plaintiff
was of unsound mind when he made the note and mortgage,
the defendant was ignorant of the fact; that at that time the
plaintiff appeared to be rational and competent to transact
ordinary business; that the defendant had known him for five
years or more, and during all that time his soundness of mind
was not questioned to the defendant's knowledge until a short
time prior to his bringing this suit, and then suspicion of
such unsoundness of mind arose only from the publication
of the matter by the plaintiff himself; that said note and
mortgage were executed for a balance due the defendant from
the plaintiff of unpaid rent for sixty-five acres of good farm-
ing lands, with buildings, in Benton county, which the de-
fendant had leased to the plaintiff for a term extending from

March 1st, 1877, to February 28th, 1878, for 650 bushels of corn or the value thereof in money, payable January 1st, 1878; that the defendant accordingly took and held possession of the farm for the entire term aforesaid, and, in a settlement subsequently made between them, the plaintiff, having chosen to pay the rent in money, made said note for the balance due the defendant; that the plaintiff is a farmer and had always pursued that business for the support of himself and family, and the use and occupation of farm land was to him a necessity; that in all of the defendant's transactions with him, she acted in good faith, and, the plaintiff having had the full enjoyment of the lease for the time aforesaid, the parties can not now be placed *in statu quo*. Wherefore, etc.

This answer shows that the note and mortgage were made upon a sufficient valuable consideration; and, aside from the alleged unsoundness of the plaintiff's mind, the charge of fraud, as stated in the complaint, is in terms too general to be of significance. The question upon the demurrer, therefore, comes to this: The plaintiff was of unsound mind, but the fact was not apparent or known to the defendant, who leased him her farm for one year. He took and enjoyed the possession, made a settlement and executed his note to the defendant for the balance of the rent, and to secure its payment executed a chattel mortgage upon the property, which he now seeks to recover. The possession of the defendant was obtained and held solely under color or by virtue of the mortgage, and was rightful, unless the alleged unsoundness of the plaintiff's mind made it wrongful. It is not averred that before bringing the action the plaintiff had made a demand for the property, or had done any other act to notify the defendant that he had elected to disaffirm his note or mortgage.

If the pleader had been content to abide by the general averments of ownership and right of possession in the plaintiff, and the unlawful taking and detention by the defendant, the paragraph would have been good, and the question one

of proof, but as he chose to aver the facts specially, the question of the legal effect of the facts stated is presented.

Upon these facts, it seems clear, upon authority as well as reason, that the plaintiff was not entitled to recover. It is now the well settled doctrine of this court, that the contracts of the unsound in mind, whose incapacity has not been judicially determined, are not void, but only voidable, and may, upon the removal of the disability, or by the act of a lawfully appointed guardian, be disaffirmed or ratified. *Musselman* v. *Cravens*, 47 Ind. 1, and cases cited; *Nichol* v. *Thomas*, 53 Ind. 42; *Freed* v. *Brown*, 55 Ind. 310; *Wray* v. *Chandler*, 64 Ind. 146; *Hardenbrook* v. *Sherwood*, 72 Ind. 403; *Schuff* v. *Ransom*, 79 Ind. 458.

If the contract in respect to the party of unsound mind is wholly executory, no act of disaffirmance is necessary, and the incapacity may, of course, be pleaded in defence to the action by the other party, or his assignee.

But if the contract has been performed, or if the consideration has been paid, or the possession of property parted with, under the contract, by the party under disability, there must be an act of disaffirmance before the other party can be put in the wrong, and a complete right of action established to recover the consideration so paid, or the possession of property which had been surrendered or taken away under the contract or deed. Cases, *supra.*

The execution of a chattel mortgage vests the title to the chattel at once in the mortgagee, not absolutely, indeed, but on a condition subsequent; and unless it is otherwise stipulated, the right of possession follows the right of property. If there be such a stipulation, the right of possession follows the right of property upon a breach of the condition. Jones Chattel Mortgages, section 426.

The plaintiff does not allege that he had been adjudged to be *non compos.* This being so, his mortgage was not void, and, until disaffirmed, it justified the taking and holding of possession of the property by the appellee. It follows that,

if otherwise good, the second paragraph of the complaint is bad, because it does not allege a disaffirmance before bringing the action.

But the question arises, and may as well be considered here as upon the instructions, which also present it, whether, upon the facts stated in the answer, the plaintiff, though of unsound mind when he made the note and mortgage, had the unqualified right to disaffirm and set them aside.

Counsel for the appellant insist, that once the insanity of a party to a contract, of whatever character, is conceded, the right to disaffirm is absolute; while counsel for the appellee contend, as the court below instructed, that "The contracts of persons of unsound mind, who are not under guardianship, are, at most, only voidable. Courts will enforce or disregard such contracts, according to the circumstances of the case. If there is nothing in the appearance, conversation or actions of the person of unsound mind, indicating his mental incapacity, and if a person, ignorant of his unsoundness of mind, makes a contract with him, taking no undue advantage, and if such contract becomes so far executed that the parties can not be placed in the same condition respecting the subject-matter of the contract that they were in immediately before the making of such contract, the law permits the contract to stand, and will not disturb it on account of the mental incapacity of one of the parties."

This is in accord both with authority and with reason and conscience. In *Musselman* v. *Cravens, supra,* a passage from Story is quoted with approval, which concludes as follows: "And so, if a purchase is made in good faith, without any knowledge of the incapacity, and no advantage had been taken of the party, courts of equity will not interfere to set aside the contract, if injustice will thereby be done to the other side, and the parties can not be placed *in statu quo,* or in the state in which they were before the purchase." 1 Story Eq. Jur., sections 227, 228.

And so, in 1 Chitty Contracts (11th ed.) 191, it is said:

" In like manner, it has been decided, that where a person apparently of sound mind, and not known to be otherwise, enters into a contract for the purchase of property, which is fair and *bona fide,* and which is executed and completed, and the subject-matter of the contract has been paid for and fully enjoyed, and can not be restored so as to put the parties *in statu quo;* such contract can not be set aside, either by the alleged lunatic, or by those who represent him. And so, where the plaintiff had entered into a contract for the purchase of land, and had paid a deposit on the purchase-money, pursuant to the conditions of sale; and it appeared that, at the time of the contract, he was a lunatic, and incapable of understanding its meaning; but that the defendant entered into the contract and received the money fairly and in good faith, and without knowledge of the lunacy : it was held, that the plaintiff could not recover back the money."

In *Wilder* v. *Weakley's Estate,* 34 Ind. 181, it was said: " It has long been established that a lunatic, like an infant, is liable for necessaries suitable to his condition in life. But the more modern authorities go much further." And, after quoting from Addison Con. (6th ed.) 1033–4, an extract to the same effect as the foregoing, the following is added :

" We think it may be safely stated, both on principle and authority, that where a person apparently of sound mind, and not known to be otherwise, and who has not been found to be otherwise by proper proceedings for that purpose, fairly and *bona fide* purchases property and receives and uses the same, whereby the contract of purchase becomes so far executed that the parties can not be placed *in statu quo,* such contract can not afterwards be set aside, or payment for the goods be refused, either by the alleged lunatic or his representatives." See authorities collected by Rawle in Smith on Con. (5th ed.) 343–4 ; *LaRue* v. *Gilkyson,* 4 Pa. St. 375 ; *Beals* v. *See,* 10 Pa. St. 56 ; *Molton* v. *Camroux,* 2 Exch. 487 ; S. C., Ewell Lead. Cases, 614 ; *Beavan* v. *McDonnell,* 9 Exch. 309 ; S. C., 10 Exch. 184 ; *Loomis* v. *Spencer,* 2 Paige, 153 ; *Campbell* v.

*Hooper*, 3 Smale & G. 153 ; *Fitzhugh* v. *Wilcox*, 12 Barb. 235 ; *Person* v. *Warren*, 14 Barb. 488 ; *Yauger* v. *Skinner*, 14 N. J. Eq. 389 ; *Young* v. *Stevens*, 48 N. H. 133 ; *McCormick* v. *Littler*, 85 Ill. 62 ; *Hassard* v. *Smith*, 60 Ired. Eq. 429 ; *Behrens* v. *McKenzie*, 23 Iowa, 333 ; *Sims* v. *McLure*, 8 Rich. Eq. 286 ; *Matthiessen, etc., Co.* v. *McMahon*, 38 N. J. L. 536 ; *Lincoln* v. *Buckmaster*, 32 Vt. 658 ; *Long* v. *Long*, 9 Md. 348 ; *Lancaster Co. Nat'l Bank* v. *Moore*, 78 Pa. St. 407.

It is manifest that a person of unsound mind, whose incapacity has not been judicially determined, can not, with a due regard for the rights of others, be permitted, like an infant (except as to necessaries) or a married woman, to exercise the privilege of disaffirming his contracts, irrespective of their character and the circumstances under which they were made. Every person may well be on his guard as to whether he is dealing with a married woman, or an infant ; but not so as to the insane who afford no outward sign of their incapacity. The presumption of law is, that any person of mature years is of sound mind, and in the absence of something in his appearance or conduct to indicate, or of some other notice of the incapacity, the person who contracts with him fairly must be protected, else there can be no safety in dealing, one man with another. *Eberwine* v. *The State, ex rel. Koster*, 79 Ind. 266.

The issue was made in the case before us, and, by the instructions of the court, was fairly submitted to the jury, whether the defendant dealt with the plaintiff in good faith, believing him to be of sound mind ; whether the lease and the note and mortgage were fair and just contracts toward the plaintiff ; and upon these points the finding of the jury was for the appellee. There was no dispute that the appellant had occupied and had the use of the farm during the term of the lease. He had had, therefore, the full benefit of the contract on his part, a benefit which he could not restore to the appellee, and for which, therefore, in good conscience, and in order to place her *in statu quo*, he ought to have made, or offered to make, a just compensation. He had in the first instance given

a mortgage to secure the discharge of his obligations under the lease, but instead of paying in full the rent in corn or money, as stipulated, he gave a note for the amount unpaid, and a new mortgage, which, therefore, was not merely a security for a pre-existing debt. It was a substitute for the prior security as well, and under it, after default in its condition, the defendant had taken, sold and bid in the mortgaged property. And now, without offering to make payment to the defendant of a just compensation for the use of her farm, the appellant disaffirms the mortgage, and asks the court to aid him in recovering the property. There is neither law nor equity in the proposition.

It would seem, on principle, that if the defendant had dealt with plaintiff, knowing his incapacity, he would have had the unqualified right to disaffirm his note and mortgage, and to reclaim his chattels, leaving her to such remedy, if any, as the law could afford her, to recover compensation for the use of her land. If the lease of the farm was a necessity to the plaintiff, he ought, it would seem, to be liable, in any event, for the fair value, if not for the agreed price. It has been held to be sufficient notice, where the circumstances known in regard to the other's mental condition were such as to convince a reasonable and prudent man of his insanity, or even to put him on inquiry, by which he might, if reasonably prudent, have learned the fact. *Lincoln* v. *Buckmaster*, 32 Vt. 658. See note to *Wirebach's Ex'r* v. *First Nat. Bank*, 21 Am. Law Reg. 29.

There is apparent conflict in the cases upon the question whether the insane party to a contract or deed, on restoration to his right mind, or his guardian for him, may recover what he parted with, without restoring what he received in the transaction. See *McGuire.* v. *Callahan*, 19 Ind. 128; *Nichol* v. *Thomas, supra; Arnold* v. *Richmond Iron Works*, 1 Gray, 434; *Gibson* v. *Soper*, 6 Gray, 279; *Foss* v. *Hildreth*, 10 Allen, 76; *Henry* v. *Fine*, 23 Ark. 417.

If determined upon principle, it would seem that if the other party to the contract entered into it in good faith and with-

out notice of the incapacity, and the contract itself was fair, either an actual restoration would be necessary, or, if that had become impossible, a just compensation instead; and if neither restoration nor fair compensation could be accomplished, then, under the rule already stated, a disaffirmance would not be permitted.

If the other party to the transaction had notice of the disability, or the contract was unfair or fraudulent on his part, the party who had been under disability, except in case of a contract for necessaries, should be allowed to disaffirm upon restoring or offering to restore what he had received, or so much of it as remained in his possession or control after the disability was removed, and after he had become fully informed in reference to the contract and his rights and obligations under it; but further than this, he should not in such case be required to restore or make compensation for what he had received. If what he had received had been converted into something else, yet in his possession, he ought perhaps to surrender that to the other party.

These subjects, however, must be regarded as open for further consideration, as the questions may arise. They are not directly involved here.

It is insisted that the court erred in instructing " that the plaintiff must have established by a preponderance of evidence that he was insane at the time he executed the note and mortgage." " We have complained of this instruction," says counsel, " because there is evidence in the record tending to show that he was insane prior to the execution of the note and mortgage, and the presumption of law is that the same condition of mind continues."

There was no error in the instruction. The presumption spoken of does not affect the burden of the issue. The plaintiff was bound to prove his insanity at the time of making the contract. This he might do by proving a prior insanity of a character which was likely to continue, and the instruction says nothing to the contrary.

The appellant asked the court to instruct that "If the plaintiff has established by a preponderance of the evidence that he was of unsound mind prior to the making of the chattel mortgage, then the burden of proof is cast upon the defendant to show that the plaintiff was of sound mind at the time of the execution of said mortgage," etc.

The court properly refused so to instruct. It depends much on the character of the insanity proven, how strong the presumption of its continuance ought to be, and it is a question of fact, in view of the circumstances of the case, whether the disability, once shown to have existed, did in truth continue to the time in question. The burden of proving insanity at a time stated can not shift from the party who has alleged it. The proof of prior insanity may be, and unless controverted will be enough; but when all the evidence *pro* and *con* has been heard, including the prior insanity, which is only an item of evidence on the point, the decision must be against him who alleged the insanity, unless the preponderance of all the evidence was with him.

It may be doubtful whether it is quite accurate to say that the burden of a particular affirmative issue ever shifts in the course of a trial. The necessity for offering further evidence in respect to it may change from one side to the other, but this is quite a different thing from a change of the burden of the issue itself.

Where the issue is formed by the averment of facts on one side, and a denial thereof on the other, and the evidence is confined to the inquiry, whether the facts averred were true, it is plain that the technical burden of proof remains throughout with the party who affirms; but where, under the issue so formed, it is competent for the defendant, besides disputing the plaintiff's case, to admit it, and prove other facts in avoidance, as, for instance, in cases before or which originated before justices of the peace, and in actions for the recovery of possession of property, real or personal, there may be clearly a shifting of the burden of proof.

Thus, in *Meikel* v. *The State Savings Institution*, etc., 36 Ind. 355, 359, it was said : "This making out a *prima facie* case by the evidence, and thus casting the burden of meeting it on the other side, occurs in every day practice." And in *Hayes* v. *Fitch*, 47 Ind. 21, is quoted Sharswood's note to 1 Starkie's Ev. 587, which reads as follows: "If the defendant would show matter in avoidance, after a *prima facie* case has been made out by the plaintiff, the burden of proof shifts upon him."

The significance and correctness of this statement depend on the meaning to be attributed to the phrases "matter in avoidance" and "*prima facie* case." So long as the dispute is concerning the *prima facie* case—the facts which constitute it— the burden is on the plaintiff, but when that case is conceded, and matter in avoidance is sought to be shown, the burden shifts. But this, it is plain, is a shifting of the issue, as well as of the burden of proof. The first issue was the truth of the plaintiff's alleged case; the new issue is the truth of the proposed matter in avoidance.

As a general proposition, the burden of proof in respect to the different parts of a case may be determined by reference to the pleadings, the plaintiff being bound to prove, if denied, what he has affirmed in his complaint or reply, and the defendant what he has affirmed in his answer; but, beyond the reply, with which, under the code, pleading stops, the question must be determined by the nature of the evidence and its relation to the case, the burden of rebutting being on the defendant, of surrebutting on the plaintiff; and in actions of replevin, ejectment, or the like, wherein the pleadings do or may end with the complaint and an answer in denial, the burden of the evidence is upon the party who, if special pleading were required, would be bound to allege the particular matter sought to be proven. In some cases, as in *Hayes* v. *Fitch, supra*, and *Uhl* v. *Bingaman*, 78 Ind. 365, it may be necessary as a rule of pleading, for a party to negative his consent to an act, or notice of a fact, and yet he may not be

required to produce evidence on the point, it being sufficient for him to establish the affirmative matters of his plea, to avoid which the other party must prove the fact which the first had denied. In such case there is a shifting of the burden of proof; but it is not an exception from the proposition that the burden of proof does not change unless upon a corresponding change of the issue or affirmative matter in dispute. The second party does not deny the *prima facie* case, or, stated more accurately, the *pro hac vice* conceded case, of the first party; but, in avoidance of it, advances new matter, which he has the burden of proving, just as if he had pleaded it specially.

The questions considered have been presented and argued in a variety of ways, but the points decided dispose of the merits of the case.

Judgment affirmed, with costs.

Opinion filed at November term, 1881.
Petition for a rehearing overruled at May term, 1882.