## LIPPINCOTT *et al.* *v.* SHAW CARRIAGE CO. *et al.*

(*Circuit Court, D. Indiana.* March 10, 1888.)

1. CREDITORS' BILL—DISTRIBUTION OF FUNDS—DEFENDANTS' RIGHT TO SHARE.
    Chattel mortgages covering the company's entire property given by an insolvent corporation to two banks, which were among its creditors, were held to be invalid, not for fraud or want of consideration, but because the corporation, being governed by four directors, two of whom were liable as indorsers upon the notes to secure which the mortgages were executed, could not prefer the holders of the notes over unsecured creditors. These mortgages had been foreclosed in the state courts prior to the filing of the bill, which was brought by a judgment creditor of the corporation, who was not a party to the foreclosure, and who sought for himself, and other creditors who should come in, to have the mortgagees declared trustees of the funds realized. *Held,* the mortgages being valid as between the banks and the corporation, that the banks were not in the case as intervenors, and that they could not be required, as a condition of being allowed to share in the fund, to put on record a formal request to be admitted "under the invitation of the bill."

2. SAME—CHATTEL MORTGAGES—FORECLOSURE.
    Where a chattel mortgage executed by an insolvent corporation to some of its creditors has been foreclosed in the state courts, the fact that it is subsequently set aside in the federal courts at the suit of a judgment creditor not a party to the foreclosure, on the ground, not of fraud or want of considera-

tion, but because the preference was beneficial to some of the directors, does not affect the rights of the mortgagee to retain the proportionate shares of the fund of such intervening creditors as were parties to the proceedings in the state courts, as well as his own share.

3. SAME—CREDITORS CONCLUDED BY DECREE OF FORECLOSURE.

Two banks, F. and I., creditors of an insolvent corporation, procured each a chattel mortgage from the company on the entire plant to secure their claims. They then foreclosed the mortgages in the state courts in separate suits, which were consolidated before final decree. To the suit of F. a partnership creditor was made a party, but in the suit of I. the firm was not properly served under the laws of Indiana, where the bill was filed. Both mortgages were subsequently held invalid, because the preference so given was beneficial to some of the directors, in the federal court, on a judgment creditors' bill filed by creditors who were not parties to the foreclosure, and the banks adjudged trustees of the respective proceeds of sale. *Held,* on final distribution of the fund, that the partnership should take nothing from the proceeds in the hands of F., but should receive its percentage from those in the hands of I.; that creditors who were not parties to the foreclosure should share alike in both funds; and that neither bank should have anything from the other, but that each should retain what, but for the decree in the state court, and because of the validity of the mortgages between the parties thereto, would go out of its fund to the other, and to the creditors bound by that decree.

4. SAME—SOLICITORS' FEES.

An allowance of a solicitor's fee to be taxed as costs, or taken from the fund before distribution, will not be granted complainant in a judgment creditors' bill to set aside certain mortgages executed by an insolvent corporation, and to have the mortgagees declared trustees for the company's creditors, where the mortgages are invalid solely on the ground that they amount to preferences beneficial to directors, and not because of fraud or want of consideration.

5. SAME—COSTS OF REFERENCE—APPORTIONMENT.

A judgment creditors' bill attacked a chattel mortgage executed by an insolvent corporation on the ground of fraud, and, a foreclosure having been had, asked that the mortgagees be adjudged trustees of the proceeds of sale for the benefit of the company's creditors. The court found no fraud or want of consideration, but set the mortgage aside because it contained an illegal preference of demands indorsed by directors of the corporation. The testimony put in at the first reference was pertinent, however, on the question of the amount of the debt owing to the mortgagee when the mortgage was made. *Held,* an exact apportionment of costs being difficult, that the costs of the reference should be paid from the fund before distribution.

In Equity. On final distribution under master's report.

This is a suit by creditors of the Shaw Carriage Company, an insolvent corporation, for the benefit of all creditors intervening, to set aside certain mortgages made by that company to its co-defendants, the First National Bank of Indianapolis and the Indiana Banking Company, and to have the mortgagees declared trustees for the creditors of the proceeds of sales of the mortgaged property made before the bringing of this action, by virtue of a decree of foreclosure obtained in the superior court of Marion county, Indiana. As will be seen by a reference to the opinion of this court in 25 Fed. Rep. 577, where the master's report upon the first reference and a full statement of the averments and prayer of the bill may also be found, the mortgages in question are held to have been invalid, not for fraud or want of consideration, as alleged in the complaint, but because the Shaw Carriage Company, being an insolvent corporation, governed by four directors, two of whom were liable as indorsers upon the notes to secure which the mortgages were given covering the company's

entire property, could not give the holders of these obligations a valid preference over creditors whose demands were without such indorsement. Besides the proceeds of the chattel property sold under the decree of the state court, the defendant banks are chargeable with sums realized from, or the estimated value of, real estate of the carriage company, upon which, as the court in its former opinion held, they had acquired valid judgment liens; but for these sums they are required to account only as credits upon their demands against the carriage company, thereby reducing *pro tanto* their share in the fund derived from the chattel property, which they obtained and hold only by virtue of the mortgages, which have been declared invalid as against complainants and other creditors.

Pertinent to the subject of the distribution of this fund and to the different positions of counsel, the master's report, as modified by the court and by agreement of counsel, shows the following facts: By the decree of the Marion superior court the proceeds of the property sold were divided on the basis of 257 to the Indiana Banking Company and 300 to the First National Bank. The total fund in the possession of these banks to be accounted for in this action, including interest to the 1st of January last, is $63,097.93. The total indebtedness of the Shaw Carriage Company, existing when the mortgages in question were made, including the demands of the defendants, reduced by the value or amount received from sale of real estate, is $125,293.18; the several demands of the respective creditors, counting the mercantile creditors as one, being as follows:

| | |
|---|---:|
| Fletcher & Sharpe, | $20,103 38 |
| Meridian National Bank, | 4,767 03 |
| Wishard, assignee, | 9,679 75 |
| Mrs. Holliday, | 4,936 28 |
| Indiana National Bank, | 759 37 |
| Mercantile creditors, | 14,396 39 |
| First National Bank, defendant, | 21,235 73 |
| Indiana Banking Company, defendant. | 49,415 25 |
| | $125,293 18 |

Excepting Fletcher & Sharpe and the mercantile creditors, the intervening creditors above named were all made parties, and served with process, in the actions of the defendant banks (afterwards consolidated) in the state court, wherein the decree of foreclosure was had as stated, and, as indicated in the former opinion, are held to be estopped by that decree from disputing here the validity of the mortgages so foreclosed; and Fletcher & Sharpe, having been made parties to the action of the First National Bank, are likewise estopped from claiming any share of that portion of the fund in the hands of that bank, but are not estopped as to the Indiana Banking Company, because one of the members of the firm was not named as a defendant, nor served with process, in the action of that company, and the facts in respect to the mortgage of that company were not so set out in the bill of the First National Bank as to authorize a foreclosure thereof without process upon the bill of the banking com-

pany in its separate action, or on a cross-bill in the action of the First National Bank. In this condition of the case, what are the respective rights of the parties in the fund to be apportioned? Counsel for complainants and intervenors, in a supplemental brief defining and summarizing their positions and arguments, say:

"What amount shall be allowed for solicitor's fees, and how shall it be charged in the distribution? Shall the complainant be entitled to recover full costs, including the master's fee, and shall these costs, so far as made by the defendant banks, be charged against their dividends, or shall all the costs be charged against the fund, or shall any portion be charged against the complainant? Shall the funds be treated as one, and all the parties allowed to participate, including Fletcher & Sharpe, or as two funds, Fletcher and Sharpe being admitted as to the Indiana Banking Company and excluded as to the First National, and each of the defendant banks excluded from the division of the assets with which the other is chargeable? We will not attempt to reproduce the points made in argument, but desire to emphasize one proposition which seems to us to be controlling of several of the questions raised, and that is that the defendant banks are not claiming—cannot claim- -anything here under their mortgages. If they do so claim, they must be content with the residue after the complainants and intervenors have been paid in full. The mortgages have been annulled, set aside, held for naught. It is as if they had never been, and the fund brought in had been found in the hands of the defendant banks as money received to the use of the Shaw Carriage Company, and the whole fund had been brought into court. *Riggs* v. *Murray*, 2 Johns. Ch. 582. The creditors of the Shaw Carriage Company, your honor having this fund in charge, present their claims as upon a distribution. The banks come in by the same door with the complainant and the other intervenors. The fund is the property of the Shaw Carriage Company, every dollar of it. No dollar of it belongs to either of the banks until your honor has assigned it to them upon distribution here. No more than a single dollar belongs to the complainant or any other intervenor. If the complainants had asked it, the court would have appointed a receiver for the Shaw Carriage Company, and directed him to recover that money, and his recovery, of course, would have been for the whole amount; and you should have ordered as in *Riggs* v. *Murray*, *supra*, that the whole be paid in. As to solicitor's fees, our position is that the fund in court has been brought in by the complainants. The other intervenors, including the defendant banks, if they come in at all, come in under the invitation of the bill, and that is upon condition that they share costs, the necessary burdens of bringing the fund into court. Solicitor's fees have never, in any case to our knowledge, been denied in such cases in the United States courts. The argument of the attorneys for the defendant banks rests upon the proposition that they are not here as intervenors dividing the fund that has been brought in, but as defendants paying in only a portion of the proceeds of the mortgage property, and retaining under their mortgages the balance. This is not true. The mortgage has been set aside. We cite as bearing upon this question: *Trustees* v. *Greenough*, 105 U. S. 527; *Railroad Co.* v. *Pettus*, 113 U. S. 116, 5 Sup. Ct. Rep. 387; *Attorney General* v. *Society*, 13 Allen, 497; *Ex parte Plitt*, 2 Wall. Jr. 482, 483; *Larkin* v. *Paxton*, 2 Mylne & K. 320; *Barker* v. *Wardle*, Id. 818. If the estoppel as to the First National Bank against Fletcher & Sharpe is maintained, then, of course, the funds in the hands of the two defendant banks must be distributed separately as to those who are entitled to share as to it; and it is agreed by the counsel representing both banks, respectively, that neither is entitled to share as against the other. Therefore the order should be that, as to the fund for which the Indiana Banking Company must account, the defendants Fletcher & Sharpe and commer-

cial debt creditors shall share; that, as to the fund for which the First National Bank must account, the commercial debt creditors and that bank shall be admitted to share; or your honor must reconsider your ruling that the estoppel as to Fletcher & Sharpe prevails in behalf of the First National Bank, and hold that there is no joint estoppel, and that, the defendants being jointly bound, consequently no estoppel arises. In that event, Fletcher & Sharpe must be admitted to prove against the whole fund as one fund."

Counsel have also cited the following cases: *In re Stephens*, 3 Biss. 187; *Hone* v. *Henriquez*, 13 Wend. 240; *Weed* v. *Pierce*, 9 Cow. 729; *Bodley* v. *Goodrich*, 7 How. 276; *Bank* v. *Hofheimer*, 23 Fed. Rep. 17; *Bank* v. *Earle*, 110 U. S. 716, 4 Sup. Ct. Rep. 226; *Morsell* v. *Bank*, 91 U. S. 357; *Butler* v. *Jaffray*, 12 Ind. 504; *Graydon* v. *Barlow*, 15 Ind. 197; *Tompkins* v. *Association*, 19 Ind. 197; *Cooke* v. *Ross*, 22 Ind. 157.

*Horace Speed* and *Harrison, Miller & Elam*, for complainants and intervenors.

*Claypool & Ketcham* and *Duncan, Smith & Wilson*, for respondents.

WOODS, J., (*after stating the facts as above.*) It is certainly a mistake to say that "the fund is the property of the Shaw Carriage Company." The mortgages in question were valid between the parties, and, as between them, have never been set aside. The mortgagee of a chattel has the legal title, (Jones, Chat. Mortg. § 426; *Fay* v. *Burditt*, 81 Ind. 433;) and consequently, if the bill in this action had been brought, and the present stage of procedure reached, before steps to foreclose had been taken in the state court, it could not have been said that the Shaw Carriage Company had any interest in the property, except a right of redemption, by paying the mortgage debt. But by the decree of the state court, consummated in a sale of the property, that equity has been extinguished; and upon no supposable contingency—not even if this court had found that the mortgage debts were fictitious, and the fund more than enough to pay all just demands—could an order be rightfully made for the return or payment of a dollar of the surplus to the Shaw Carriage Company. That surplus would justly belong to the defendant banks, and it would be so adjudged, not upon the theory of a distribution made to them as intervenors under complainants' bill, but because the money was lawfully theirs by virtue of a transaction valid between the parties, and to that extent unassailable by creditors of the Shaw Carriage Company. Indeed, in the case of *Dunphy* v. *Kleinsmith*, 11 Wall. 610, speaking in respect to an action of creditors to set aside a mortgage alleged to have been fraudulently made to secure fictitious liabilities, the supreme court said: "The decree against the defendant must be a decree for an account. He must be called to account for just what property has come into his hands, and no more; and he will be entitled, under ordinary circumstances, to a rebate for the amount that was justly and honestly due him." That is to say, as I understand this statement, the case being one in which a lawful preference might have been given for the "amount justly due," the preference given, under ordinary circumstances, will be upheld to that extent, notwithstanding an overstatement in the mortgage or assignment of the amount of indebtedness intended to be secured. Much

more,—and certainly, as it seems to me, both upon principle and upon reason,—it must be said in cases like this, where there is no taint of fraudulent intent in the conduct of the respondents, that they will be permitted to retain, as justly their own, such proportion of the fund as they would have been entitled to receive upon a ratable distribution between creditors. This view involves no wrong in theory or result to other creditors. The strict right of each of them, when the debtor became insolvent, and ceased to do business, was to receive his proportionate share of the assets; and, holding the defendants as trustees of the fund derived from the assets, they can claim in a court of equity no further interference than necessary for the full enforcement of that right and the corresponding rights of other intervening creditors. 1 Story, Eq. Jur. § 371; *Stewart* v. *Platt*, 101 U. S. 731; *Findley* v. *Cooley*, 1 Blackf. 262; *Burtch* v. *Elliott*, 3 Ind. 99; *Springer* v. *Drosch*, 32 Ind. 486; *O'Niel* v. *Chandler*, 42 Ind. 471; *Van Wy* v. *Clark*, 50 Ind. 259; *Garner* v. *Graves*, 54 Ind. 188; *Edwards* v. *Haverstick*, 53 Ind. 348; *Stout* v. *Stout*, 77 Ind. 537. Beginning with the original hearing, counsel for the complainants have insisted and several times have moved that as a condition of being allowed to share in the fund the defendant banks be required to abandon their hostile attitude of defense, and to put on record a formal request to be admitted "under the invitation of the bill" to share the benefit of the suit on an equality with other intervenors. The inadmissibility of this proposition, now that its bearing upon present questions is apparent, is, as it seems to me, quite evident. As against the carriage company and all parties to the decree of the superior court, the defendant banks have a perfect and exclusive right to the entire fund, and in respect to other creditors are bound to surrender to them only their proportionate share of the fund. As stated in the case of *Stout* v. *Stout*, *supra:*

"The theory of the action [which was to set aside a series of fraudulent conveyances] is not to annul the deeds, and revest the title in the original fraudulent grantor, but to convert the final grantee into a trustee holding for the benefit of the injured creditors. Except as to creditors, the conveyance is valid, and it will not be interfered with further than necessary to secure their rights."

In a proper case, of course, as has been suggested, a receiver will be appointed, and, if necessary, the entire property or assets brought into the custody of the court will be converted into money; but this involves no different principle from that stated. The costs of the receivership, including compensation to the receiver's counsel or solicitors, might doubtless be taxed against the fund in such cases, (*Hubbard* v. *Camperdown Mills*, 1 S. E. Rep. 6;) but if on final distribution any of the fund remains after payment of creditors in full or in part, according to their respective equities, the remainder will go to the defendant from whom the fund or property was taken, as of right, and not upon the fictitious theory that he takes as an intervenor or plaintiff in the action, when in fact he has been a defendant throughout the litigation. The attitude and conduct of the defendants in the case, therefore, in the

opinion of the court, afford no reason for denying them the ordinary privilege conceded to litigants of contesting any adverse ruling of the court, and of carrying the question to the supreme court for final decision. But, if the position of counsel be true, the defendant banks cannot receive or retain any part of the fund in their possession, without thereby surrendering the right to dispute further the first and most important ruling in the case,—that is, that their mortgages were invalid. Outside of bankruptcy cases, the court knows of no authority for such practice, or for such a rule of right and equity. Counsel, it may be observed, have not adhered with entire consistency to the proposition that the defendant banks, if they share at all in the fund, must do it upon the terms offered to intervenors; because they have also insisted that as between themselves these defendants must not only continue bound by their mortgages and by the decree of foreclosure thereof, but must separately account in this action, each for the portion of the fund in its possession, without right to share in that portion thereof in the possession of the other, or to have the debt of the carriage company to the other counted as a part of the aggregate indebtedness; while, as they urge, the commercial creditors shall be allowed to prove their demands in full against each; and reference is made to *Bank* v. *Car Co.*, 20 Fed. Rep. 69, as authority for permitting the proof of claims in full against distinct funds. Of this case it is enough to say that the claims there considered were liens by contract upon the different funds, and the decision simply gave full effect to contract rights. It is, of course, true that these banks can be put in no new attitude towards each other, but their relation to the complainants and other creditors who are not bound by the decree of the state court is different, and must be determined by the principles of equity already stated; and therefore, whether the distribution shall be deemed to be of one fund or two, the sum of all demands against the carriage company, including those of the defendant banks, should be taken into consideration; and, if this be done, the share or percentage of the fund which each creditor entitled to participate can receive will be the same in the aggregate, whether treated as derived from one fund or two. But if the distribution is to be made upon the theory of two funds separately considered, and the demand of one defendant bank is not to enter into the computation by which distribution of the fund in possession of the other shall be determined, and *vice versa*, then not only will the commercial creditors and Fletcher & Sharpe receive much larger shares of the fund, but their shares, as between themselves, will be relatively greatly different; and the amounts taken from the defendants, besides being larger in the aggregate, will be increased in an unequal ratio, —these inequalities and irregularities arising in part from the fact that Fletcher & Sharpe can share in one fund and not in the other, and in perhaps larger part from the fact that the difference between the respective demands of the defendant banks against the carriage company does not correspond with the difference between the respective amounts for which they must account. Besides, a computation upon this basis leads, as will be found upon experiment, to an arithmetical tangle from which

there seems to be no escape entirely consistent with either equitable or mathematical principles; while, if each creditor be allowed a percentage of the fund or funds in which he is entitled to share, equal to the percentage of his demand in the sum of all demands against the carriage company, the computation will be free from difficulty, and in harmony with the principles stated, both of law and equity. In this way Fletcher & Sharpe will take nothing from the First National Bank, but will receive their percentage of the fund in the possession of the Indiana Banking Company; and the commercial creditors will take alike from both funds; while neither bank will take anything from the other, but each will retain what, but for the decree of the superior court and because of the validity of the mortgages between the parties, would go out of its fund to the other and to the creditors bound by that decree. On this theory, it was conceded in argument, as I understood, that if defendants had paid to any creditor his proportionate share of the fund, or of the value of the mortgaged assets, they would be entitled to have the amount of that creditor's demand considered, as if assigned to them, in determining what other creditors should receive; and by the same principle I am unable to see why the defendants shall not be allowed a like benefit from the estoppel obtained in the state court against the creditors made parties to that procedure. To so hold does not diminish the just remedies of creditors not estopped; while to hold otherwise would, without merit or consideration moving from them or from any other for their intended benefit, enhance their interests, to the detriment of the defendants who obtained the decree. If complainants had procured a lien by levy of their execution upon the mortgaged chattels before they were sold under the foreclosure decree, and they had brought their bill here to annul the mortgages, this court would of course have recognized their priority or right to full satisfaction, both as against the defendants and against intervenors. But that is not the situation, nor is the case one in which by the mere bringing of the bill and the service of process the complainants sought to procure, or, perhaps, could have procured, an equitable lien or priority over other creditors; and consequently the cases wherein such priorities have been recognized are not controlling of the questions presented here. In any event, the lien of a creditors' bill is commensurate only with the remedy or relief proper to be granted under the bill; and that much, in effect, the complainants are awarded in this case, in that the defendant banks are held to account for all moneys and property received by them under their mortgages, and the fund and property, so far as brought under the power or into the custody of the court, (as the real estate in possession of the receiver of the First National Bank has been,) is held for the full payment of the sums decreed to be paid into court for the complainants and intervenors. The question is not whether the defendants might, of their own motion, have proved and brought into the computation the claims of creditors who were not parties to the foreclosure decree nor to this suit, and to whom they had paid nothing. Doubtless, in order to obtain a complete adjustment of rights and liabilities, and to protect themselves against further suits, they might have had a

reference, with an order that claimants should present their demands within a time stated, or be barred of any right in the fund; but the question presented respects only the rights and demands of parties to the record whose claims have been established, beyond dispute by the complainants and, in respect to the amount due thereon, beyond dispute by any party to the case.    Consistently with this situation and the respective rights of the parties, the distribution can be made only on the basis already stated: that is, the fund must be apportioned according to the several amounts of the different demands proven.    And when this is done, who shall take the sums corresponding to the demands of A., B., and C., the estopped creditors, so called?    The complainants and other intervenors cannot, because as against them the rights of A., B., and C. are perfect and exclusive; but, as against the defendants, A., B., and C. cannot take, because they are estopped by the decree of foreclosure.    The necessary conclusion, not inconsistent, as already shown, with the rights of any party, is that these sums must remain in the hands of the defendants.    If possibly there be error in this conclusion, I think it more probably is in the holding that in this action any creditor is estopped from sharing by reason of the decree in the state court, and, if the court has erred in this respect, an appeal will give the creditors so excluded their just rights, without harm to other parties, plaintiff or defendant; but, after a distribution upon the theory contended for, such an appeal, successfully prosecuted, would result in an incomplete remedy to the appellants, or in taking from the defendants more than would be just, or at least in a situation difficult to adjust equitably between the parties.

The motion of complainants for an allowance of a solicitor's fee, to be taxed as costs, or taken from the fund before distribution, it is evident from what has already been said, should be denied.    The power to make such allowances, at best, is dangerously arbitrary, and, as has often been suggested by the courts, ought not to be extended to doubtful cases.    In this case, such an allowance, if asked, might properly be made against intervenors who have accepted "the invitation of the bill;" but no example of a like charge against defendants in the attitude of these has been cited, or, as I think, ought to be established.    To illustrate the inequity of the consequences to which the proposition would lead, let us suppose that the court had ordered in this case that the commercial creditors and Fletcher & Sharpe should be paid in full, taking $35,000 of the fund, and leaving in possession of the defendants $28,000; or suppose, instead of the mortgaged property having been converted into a fund, that the defendant banks had purchased the property at the decretal sale, and were still holding it, and that by reason of enhanced values it had been found, in this case, to be worth a sum exceeding the amount of all demands against the carriage company, and that accordingly the court had required the defendants to bring into court money enough to satisfy the demands of all creditors not bound by the decree of foreclosure,—could it be insisted (and yet such is the logic of counsel) on either supposition that, theoretically, not only the entire fund or property must be deemed to have been brought into court,—which in a

sense is true,—but that the defendants must be deemed to take, as distributees under complainant's bill, the remainder left in their possession, and therefore should be required to contribute to the compensation of complainants' solicitors ratably, and not only in proportion to the amount of their demands against the common debtor, but also upon the surplus over and above all demands derived from the enhanced value of the property?

In respect to the costs of the first reference to the master, which the defendants ask to have taxed against the complainants, it is true, as stated in the former opinion, that the charges of actual fraud, in respect to which mainly the evidence on that reference was taken, were not sustained, but nevertheless much of this evidence was more or less pertinent to the inquiry made on the last reference into the amount of the demands of the defendant bank against the Shaw Carriage Company, and it would doubtless be quite difficult to make a fair or exact apportionment of these costs; therefore, as the nearest practicable approximation, it is ordered that all costs in the case be taxed against the defendant banks, and the amount thereof deducted from the fund in their hands, and that the remainder be distributed as indicated.    Decree accordingly.