## WILDER and Another *v.* WEAKLEY's Estate.

UNSOUNDNESS OF MIND.—*Contract.*—*Statute Construed.*—The statutory provision, that "every contract, sale, or conveyance of any person, while a person of unsound mind shall be void," 2 G. & H. 575, sec. 11, is applicable only to a person who has been found to be *non compos mentis* in the manner prescribed by statute.

SAME.—*Sale.*—Where goods are sold to a person apparently of sound mind, who is not known by the seller to be otherwise, and who has not been found to be otherwise by a proper proceeding for that purpose, and the contract is fair and *bona fide*, and the purchaser receives and uses the goods, whereby the contract becomes so far executed that the parties cannot be placed *in statu quo*, such contract cannot afterwards be set aside because of the unsoundness of mind of said purchaser at the time of the sale, nor can payment for the goods be refused, either by the alleged lunatic or his representatives.

SAME.—*Pleading.*—In an action to recover the price of goods sold, if, at the time of the sale, the purchaser had been duly found to be of unsound mind by a proper proceeding for that purpose, this fact is matter of defense; and it does not devolve on the plaintiff to allege the contrary in anticipation.

APPEAL from the Miami Common Pleas.

WORDEN, J.—The appellants filed their claim, duly verified, against the estate of Thomas Weakley, deceased, consisting of an account for liquors, such as whisky, brandy, gin, rum, wine, and kimmel, sold and delivered in the year 1865, amounting to the sum of six hundred and fifty-eight dollars and seventy-five cents, giving credit for cash paid thereon to the amount of four hundred dollars, and claiming a balance due thereon of the sum of two hundred and fifty-eight dollars and seventy-five cents.

To this account James M. Brown, the administrator, pleaded as follows:

"Comes now James M. Brown, the administrator of the estate of Thomas Weakley, deceased, and answering the plaintiff's complaint in this behalf, says that the said Thomas Weakley, at the time the account sued on accrued, and for a long time previous thereto, was a person of unsound mind (an imbecile) and wholly incapable of making a contract or transacting any business whatever; and that the mental condition of the said Thomas Weakley was then and there well known to the plaintiffs."

To this answer the plaintiffs replied in three paragraphs. The first paragraph of the reply avers, amongst other things, the following facts: That at the time of the purchasing of the goods, for five years before, and for six months thereafter, the said Thomas Weakley was the owner and proprietor of a large public hotel in the city of Peru, known as the Weakley house, in which a public bar was kept for the purpose of retailing spiritous liquors by the glass; that during all this time, the said Thomas Weakley was the owner and proprietor of said hotel and bar, and by his agents operating and running the same; that at the time of the sale and delivery of the goods, the plaintiff had no knowledge of any insanity or mental imbecility of the said Thomas Weakley; that during the time, &c., the said Thomas Weakley, by his family and other agents, was selling spirituous liquors by retail under a license to said Thomas from the board of commissioners of the county; that no inquest of lunacy had been held on said Thomas, and no guardian had been appointed to manage his estate until long after the sale and purchase of said goods, and that said goods were necessary in running said bar, &c.

The second paragraph of the reply alleges, amongst other things, that at the time of the sale of the goods, the plaintiff had no knowledge of the insanity or imbecility of said Thomas; that the goods were received by the family of said Thomas and sold out at retail, and the proceeds thereof went to the benefit of said estate.

The third paragraph of the reply is a general denial of the answer.

The court sustained a demurrer to the first and second paragraphs of the replication, to which ruling the plaintiffs excepted. Thereupon the plaintiffs were ruled to answer (reply) further, and failing to do so, it was ordered by the court that judgment be rendered against them, which was done, and the plaintiffs excepted.

It was error, perhaps inadvertently committed, to render judgment against the plaintiff, for failing to make further reply to the answer, as long as they had in a denial thereof; that

denial put the defendant upon proof of his answer, and the plaintiffs could not be rightfully turned out of court without a trial of the issue thus made.

We are also of the opinion that the court erred in sustaining the demurrer to the first and second paragraphs of the replication.

We have the following statutory provision: "Every contract, sale, or conveyance, of any person, while a person of unsound mind shall be void." 2 G. & H. 575, sec. 11.

This provision has little or nothing to do with the question involved here, for the reason that it is applicable to a person only who has been found to be *non compos* in the manner prescribed by the statute. This was settled by the case of *Crouse* v. *Holman*, 19 Ind. 30. The case before us must be settled on general principles of law.

It has long been established that a lunatic, like an infant, is liable for necessaries suitable to his condition in life. But the more modern authorities go much further. It is laid down by an elementary writer, that, "if a party to a contract was, at the time he entered into the engagement, a lunatic or of unsound mind, and any imposition appears to have been practiced upon him, or any advantage taken of his infirmity by the other contracting parties, the contract will be void as having been procured by fraud; but if the contract is a fair and honest contract, and bears no symptoms of the infirmity, of mind of the party sought to be charged theron, the courts will enforce it like any other contract. * * * An action for the price of goods sold and delivered, or of work done, or for the hire of horses, carriages, or servants, cannot be defeated by showing that the defendant had been found ·by inquisition to be a lunatic at the time he received the goods, or had the benefit of the work, or the use of the horses, carriages, and servants; for the law will not permit the lunatic's infirmity to be made an instrument of fraud upon third parties who have dealt with him in good faith. If a lunatic, apparently of sound mind and not known to be otherwise, enters into a fair and *bona fide* contract, such contract cannot

Wilder and Another *v.* Weakley's Estate.

afterwards be set aside." Addison Con. (6th ed.) 1033–4. Many authorities upon this point are collected by Rawle, in Smith on Con. (5th ed.) 343–4. Among the cases especially in point, are *La Rue* v. *Gilkyson,* 4 Penn. St. 375, and *Beals* v. *See,* 10 *id.* 56.

We think it may be safely stated, both on principle and authority, that where a person apparently of sound mind, and not known to be otherwise, and who has not been found to be otherwise by proper proceedings for that purpose, fairly and *bona fide* purchases property and receives and uses the same, whereby the contract of purchase becomes so far executed that the parties cannot be placed *in statu quo*, such contract cannot afterwards be set aside, or payment for the goods be refused, either by the alleged lunatic or his representatives.

Applying this doctrine to the first paragraph of the replication, it seems to be abundantly good. The plaintiffs, it is averred, had no knowledge of Weakley's lunancy. The goods sold are such as he was using in his daily business; no suspicion of fraud is excited by a transaction unusual or extraordinary in its character, for this was quite in the ordinary course of business. No inquest of lunacy had been held on Weakley; he had the benefit of the goods; and, if the replication be true, there is no reason in law or sound morals why the estate should not pay what the goods are reasonably worth.

The second paragraph of the replication, we think, is also good. That paragraph alleges a want of all knowledge of Weakley's lunacy; that the goods were received and sold out, and went to the benefit of the estate. This paragraph does not allege that no inquest had been held on Weakley; but we are of opinion that if Weakley, at the time of the sale of the goods, had been duly found to be a lunatic on proceedings for that purpose, it was a fact that should have been averred by the defendant.

The judgment below is reversed, with costs, and the cause remanded, with instructions to the court below to overrule

the demurrer to the first and second paragraphs of the reply.

*H. I. Sherk* and *J. Mitchell,* for appellants.

*J. M. Brown* and *J. M. Wilson,* for appellee.