### IN THE

# SUPREME COURT OF JUDICATURE

### OF THE

# STATE OF INDIANA,

## AT INDIANAPOLIS, MAY TERM, 1874, IN THE FIFTY-EIGHTH YEAR OF THE STATE.

---

## MUSSELMAN *v.* CRAVENS ET AL.

TRUST AND TRUSTEE.—*Promissory Note.—Parties.*—Where a note was made payable to certain persons, "for the purpose of erecting and endowing an institution of learning in the city of Logansport or its vicinity;"

*Held,* that the persons named were trustees of an express trust, and they, or the survivors in case of the death of one of them, were proper parties plaintiffs in an action on the note.

PLEADING.—*Reply.*—A reply pleaded in avoidance of an entire answer consisting of several paragraphs must be good as to each and all of the paragraphs.

ESTOPPEL.—*Promissory Note.—Unsound Mind.*—To a complaint on a note given to erect and endow an institution of learning, the defendant pleaded that at the time of the execution of the note he was of unsound mind; the plaintiffs replied that at said time defendant was apparently of sound mind and not to them known to be otherwise, and that in reliance upon his promise, before any disaffirmance by him, just debts and obligations had been incurred in purchasing property, erecting buildings, and endowing said institution, and thereby defendant was estopped from averring that he was not of sound mind.

*Held,* that the reply was bad. *Wilder* v. *Weakley's Estate,* 34 Ind. 181, distinguished.

CONTRACT.—*Unsound Mind.*—The contract of a person who has been judicially pronounced to be of unsound mind is void, but the contracts of a person who has not been so adjudged, and who is apparently of sound mind, are voidable

merely, and are capable of ratification or disaffirmance when reason has been restored.

From the Cass Common Pleas.

*D. C. Justice,* for appellant.

*D. P. Baldwin,* for appellees.

BUSKIRK, J.—The substituted complaint was as follows:

" Henry Cravens, Charles E. Hawthorn, James Hodge, James Hammond, William W. Curry, and John N. Converse *v.* John T. Musselman.   For complaint herein, the plaintiffs say that on the 6th day of September, 1869, they were about to organize an institution of learning, and locate the same at the city of Logansport; that to raise the necessary sum to endow the same, they lacked five thousand dollars. Whereupon the defendant, John T. Musselman, made, executed, and delivered to them his certain note, or contract, a copy of which is herewith filed, marked exhibit 'A,' and made part of this complaint; and these plaintiffs aver that after receiving the same, they did, pursuant to the terms of said note, incorporate, erect, and endow an institution of learning at Logansport, Indiana, which institution is called the Smithson College; and the plaintiffs aver that when said note was made, there was no such school incorporated; that subsequent to said incorporation, these plaintiffs became trustees with others of said corporation; that they now hold said note, or contract, for the purpose specified therein, as trustees of an express trust, to wit, to collect the same and apply the proceeds to said college and its building and endowment.   And plaintiffs further say that Albert M. Bruce is dead, and the remainder of said plaintiffs hold said obligation for this purpose and no other; and the plaintiffs aver that said note or obligation is past due, and wholly unpaid; that they have performed all the conditions therein prescribed by them to be performed; and that there is now due thereon, principal and interest, the sum of six thousand dollars, collectible without relief from valuation or appraisement laws; wherefore plaintiffs demand judgment," etc.

The instrument sued on was as follows:

"LOGANSPORT, Ind., Sept. 6th, 1869.

"Fifteen months from date, I promise to pay to Henry Cravens, Albert M. Bruce, William W. Curry, Charles E. Hawthorn, James Hodge, James Hammond, and John N. Converse, or their order, five thousand dollars, without any relief from the valuation or appraisement laws, for the purpose of erecting and endowing an institution of learning in the city of Logansport, or its vicinity.

[Stamp.] "JOHN T. MUSSELMAN."

A demurrer for the want of sufficient facts was overruled to the complaint, and an exception taken.

The appellant answered in eight paragraphs.

The first paragraph admitted the execution of the note, but alleged that the Smithson College, and not the plaintiffs, was the real party in interest.

The second paragraph admitted the execution of the note, but averred that when the defendant executed the same he was of unsound mind.

The third paragraph admitted the execution of the note, and then alleged that the defendant's signature thereto was procured by certain false and fraudulent representations, which are set out in detail.

The fourth paragraph admitted the execution of the note sued on, but averred that the consideration had wholly failed.

The fifth paragraph was the same as the third, except the fraudulent representations set out are different from those set out in the third paragraph.

The sixth paragraph of the answer admits the execution of the instrument, but avers that at the date of its execution, and for ten months prior thereto, he was a person of unsound mind, and not of sound and disposing memory, and incapable of understanding and comprehending the nature, purport, and full effect of the instrument sued on, and greatly debilitated and enfeebled both in mind and in body, so much so as to be easily influenced by those with

whom he came in contact. From such weakness he was unable to take care of his property and estate ; that by means of the undue acts and practices, and the improper influences which the plaintiffs exercised over him, he was by them improperly induced and persuaded to execute the instrument.

The seventh, eighth, and ninth paragraphs are substantially the same, and aver a specific disaffirmance of the instrument after restoration to soundness of mind.

There was a reply in two paragraphs. The first in denial. The second was as follows :

" 2. That the note in suit was given for the purpose of erecting and endowing Smithson College, an institution of learning in the city of Logansport, which the plaintiffs were engaged in organizing at the time the note was given ; that the defendant at that time was apparently of sound mind and not known to them to be otherwise ; that he had just before that been adjudged sane by a jury of Cass county, Indiana, where he resided ; that his avowed object in giving said note was to have said institution located in said city of Logansport or its vicinity, where he had two hundred thousand dollars worth of real estate, and such note was given to make up the sum necessary to secure said school for Logansport ; that upon the faith of said note said institution was removed from Muncie, Indiana, to Logansport, and they afterward incurred just obligations and debts, and spent a large sum of money, to wit, one hundred thousand dollars, in erecting building, purchasing property, and endowing said institution, all of which was done in good faith and upon the strength of said note ; and that without the said obligation their endowment would have been incomplete, said institution elsewhere located, and said buildings would not have been erected or debts incurred ; that all this was done before the alleged disaffirmance set forth in the answer was given to the plaintiffs ; and because the plaintiffs can not now be placed *in statu quo* and have been by the defendant led into debts and expenditures that otherwise

would not have been incurred, and cannot be recalled without one hundred thousand dollars injury to the plaintiffs, the defendant ought not now to defeat said note, and they ask for judgment as prayed for in the complaint."

A demurrer for the want of sufficient facts was overruled to the second paragraph of the reply, and an exception taken.

The issues thus formed were submitted to and tried by a struck jury. There was a verdict for the plaintiff, and over a motion for a new trial, there was judgment on the verdict.

The only proper errors assigned are:

1. In overruling the demurrer to the complaint.

2. In overruling the demurrer to the second paragraph of the reply.

3. In overruling the motion for a new trial.

The principal objection urged to the complaint is, that the plaintiffs had no right to maintain the action. It is argued that the instrument sued on did not create the plaintiffs trustees of an express trust, and as they had no personal interest in the note sued on, they possessed no capacity to maintain the action. We do not think so. We are very clearly of the opinion that the instrument sued upon constituted the persons named therein trustees of an express trust, and that they had the right to maintain the action. The persons named therein had no personal interest in the action, and consequently the death of one of the trustees did not affect the right of the survivors to maintain the action. The question having been fully considered in three recent decisions of this court, we do not deem it necessary to re-examine the authorities. *Weaver* v. *The Trustees of the W. & E. Canal*, 28 Ind. 112; *Dix* v. *Akers*, 30 Ind. 431; *Heavenridge* v. *Mondy*, 34 Ind. 28. The case of *Rawlings* v. *Fuller*, 31 Ind. 255, cited by appellant, was reviewed and distinguished in *Heavenridge* v. *Mondy*, *supra*.

We think the complaint was good, and that no error was committed in overruling the demurrer thereto.

We proceed to inquire whether the second paragraph of the reply constituted a defence to the answer. It was pleaded to the entire answer. It is quite certain that the facts stated therein constituted no defence to the first, third, fourth, and fifth paragraphs of the answer. The second paragraph of the reply having been pleaded in avoidance of the entire answer, it should have constituted a good defence to each and all of the paragraphs of the answer. Inasmuch as it assumed to be in avoidance of the entire answer and plainly and obviously was not and could not have been a defence to the first, third, fourth, and fifth paragraphs, the demurrer should, for that reason, have been sustained to it.

But as the pleader evidently intended it as a defence to the second, sixth, seventh, and eighth paragraphs of the answer, we will test its sufficiency as applicable to such paragraphs.

The substance of such paragraphs is, that at the time when the note sued on was executed, the defendant was, and for ten months prior thereto had been, a person of unsound mind, and incapable of understanding and comprehending the nature, purport, and full effect of the instrument sued on.

The material averments in the second paragraph of the reply were, that when such note was executed, the defendant was apparently of sound mind and not known to be otherwise, and that in reliance upon the promise of the said defendant, the Smithson College had incurred just debts and obligations in purchasing property, erecting buildings, and endowing said institution, and that therefore the defendant should be estopped from averring that he was not of sound mind.

Counsel for appellees refers us to the case of *Wilder* v. *Weakley's Estate*, 34 Ind. 181, as sustaining the ruling of the court below in holding that the second paragraph of the reply constituted a defence to that portion of the answer setting up the unsoundness of the mind of the appellant.

It was held in that case that where goods are sold to a

person apparently of sound mind, who is not known by the seller to be otherwise, and who has not been found to be otherwise by a proper proceeding for that purpose, and the contract is fair and *bona fide,* and the purchaser receives and uses the goods, whereby the contract becomes so far executed that the parties cannot be placed *in statu quo,* such contract cannot afterward be set aside because of the unsoundness of mind of said purchaser at the time of the sale, nor can payment for the goods be refused, either by the alleged lunatic or his representatives.

The ruling in the above case was limited to a case of purchase of goods, which had been received and used, and where the parties had so far executed the contract as that they could not be placed *in statu quo.* The present case differs from that in two important respects, and they are, that the note in suit was not given in consideration of the purchase of property which had been used by the purchaser, and the contract is executory. It, therefore, becomes necessary to inquire whether the principle enunciated in the above case is applicable to the present case.

The general rule is, that to make any agreement valid requires the assent of the understanding of the several parties thereto. This implies freedom of action, as well as the exercise of reason, accompanied with deliberation; the mind weighing, as in a balance, the good and evil on either side. Every true consent supposes, 1st, a physical power; 2d, a moral power of consenting; and, 3d, a serious and free use of them. Hence, it follows, that persons under duress, idiots, madmen, and infants are in general incapable of making contracts, either from a want of freedom of action, or inability to judge of their actions. This disability is not in all cases total, but *sub modo* only. But the persons laboring under it are, at all times, the peculiar objects of the paternal guardianship and protection of a court of equity. Willard Equity, 170.

Judge Cooley, in note 5 to 2 Bl. Com. 292, says:

"The old doctrine that a man shall not be allowed to

stultify himself by alleging his mental incompetency in avoidance of his contract, is no longer accepted in the law, either in England or in this country. As Mr. Parsons has well said, those who have no mind cannot agree in mind with another; and as this is the essence of a contract, they cannot enter into a contract. 1 Pars. Con. 383. And if one has not made a contract, it is difficult to discover any sound reason which should preclude his saying so when he is charged with having become a party to one. The modern authorities allow want of mental capacity to be made a defence at law, as well as a ground for affirmative relief in equity, not only by the party himself while living, but by his representatives afterward. *Lang* v. *Whidden,* 2 N. H. 435; *Mitchell* v. *Kingman,* 5 Pick. 431; *Grant* v. *Thompson,* 4 Conn. 203; *Horner* v. *Marshall,* 5 Munf. 466; *Rice* v. *Peet,* 15 Johns. 503. And if a man is so intoxicated at the time of entering into a contract as to be incapable of comprehending its meaning, nature or effect, and the other party is aware of that fact, this is a sufficient answer to an action upon it. *Gore* v. *Gibson,* 13 M. & W. 623. And see *Foot* v. *Tewsksbury,* 2 Vt. 97; *Duncan* v. *McCullough,* 4 S. & R. 484; *Harbison* v. *Lemon,* 3 Blackf. 51; *Prentice* v. *Achorn,* 2 Paige, 30; *Reinicker* v. *Smith,* 2 Har. & J. 421."

It was held by this court, in *Harbison* v. *Lemon, supra,* that a conveyance may be avoided by a grantor either at law or in equity, if, at the time of its execution, he was so destitute of understanding as not to know what he was doing, whether the incapacity were occasioned by idiocy, lunacy, or drunkenness.

In *Jenners* v. *Howard,* 6 Blackf. 240, it was said: " Mental incapacity at the time of contracting, produced by drunkenness or any other cause, is a good defence against a contract, whether that contract be evidenced by deed or parol. If the mind be incapable of assenting, the law pronounces the contract void. Drunkenness of itself merely, unless fraud be practised, will not avoid a contract; but if the party

be in such a state of intoxication, that he is for the time deprived of reason, the contract is void."

It was held in *Cummings* v. *Henry*, 10 Ind. 109, that a party may rescind a contract entered into when he was so far intoxicated as to render him incompetent to contract.

In *Crouse* v. *Holman*, 19 Ind. 30, it was held that a person alleging unsoundness of mind at a particular time, must establish, by a preponderance of the evidence, that he was not of sound mind at the given time; but when it appears that a person was, at a given time, of unsound mind, unless the unsoundness was occasioned by some temporary or transient cause, the legal presumption arises, that that state of mind continues, until the contrary is made to appear by evidence; but if, notwithstanding such unsoundness, the person had sufficient disposing memory, as if the unsoundness consisted of monomania, not impairing his capacity to acquire or dispose of property, then it devolved upon the party interested to sustain his acts in the particular case, to show that fact by evidence.

In *Somers* v. *Pumphrey*, 24 Ind. 231, it was held that a clear distinction is drawn in the law, between mere weakness of intellect and insanity, or unsoundness of mind. Mere weakness of mind is not idiocy or insanity, nor does it amount to "unsoundness of mind" within the meaning of the law. In that case the court say:

"The contract of a *non compos mentis* differs materially from one procured by fraud from a person of sound mind. In the latter case, the contract is made by one of sufficient capacity, and competent to make it, and his mind has consented to it, but that consent has been induced by the fraud of the other contracting party; but, if the person is *non compos mentis,* there is a want of capacity to contract; he does not, in a legal sense, consent, because there is a want of that mental capacity essential to a legal consent. In this respect, the case seems to be analogous to the contract of an infant, in whom there is, also, a want of capacity to contract, and it has been held that a deed made by an infant

might be avoided by his heirs, though the estate had passed into the hands of a *bona fide* purchaser, for a valuable consideration. ` Doe, ex dem. Moore,` v. *Abernathy,* 7 Blackf. 442."

In *Darnell* v. *Rowland,* 30 Ind. 342, it was held that if a party be *compos mentis,* mere weakness or feebleness of mind does not render him incapable of making a contract, but may become a controlling circumstance, when connected with other facts tending to establish fraud, in giving character to the transaction, and rendering it fraudulent; but to make a pleading good for that purpose, the *indicia* of fraud must be alleged.

In *Henry* v. *Ritenour,* 31 Ind. 136, it was held that mere dulness of intellect, from whatever cause, does not amount to incapacity to contract; and it was further held that where a party to a contract is voluntarily intoxicated at the time of making it, to the extent only that he does not clearly understand the business, this does not render his contract void or voidable, where no advantage is gained by dealing with him.

In *Reinskopf* v. *Rogge,* 37 Ind. 207, this court said : " Mental incapacity, at the time of contracting, produced by drunkenness or any other cause, is a good defence against a contract, whether that contract be evidenced by deed or parol. If the mind be incapable of assenting, the law pronounces the contract void. Drunkenness of itself merely, unless fraud be practised, will not avoid a contract; but if the party be in such a state of intoxication that he is, for the time, deprived of reason, the contract is void."·

The question arises and is discussed, whether the contract of a person *non compos mentis* is void or voidable merely. We have a statute " defining who are persons of unsound mind, and authorizing the appointment of guardians for such persons," etc., which says :

" Sec. 1. The words, ' persons of unsound mind,' as used in this act or in any other statute of this State, shall be

taken to mean any idiot, *non compos,* lunatic, monomaniac, or distracted person."

The statute then points out the mode of proceeding against any one alleged to be " a person of unsound mind and incapable of managing his own affairs."

The eleventh section of such statute provides, that " every contract, sale or conveyance of any person, while a person of unsound mind shall be void." 2 G. & H. 573.

If the above section is applicable to the present case, it must be decisive of the case, as it declares all contracts made by a person of unsound mind to be void. If the contract sued upon is absolutely void, it is incapable of ratification. But it has been several times decided that the above quoted section is applicable only to a person who has been found to be *non compos* in the manner prescribed in the above statute. *Crouse* v. *Holman,* 19 Ind. 30; *Devin* v. *Scott,* 34 Ind. 67; *Wilder* v. *Weakley's Estate,* 34 Ind. 181.

The case under examination must, therefore, be settled on general principles of law. It seems to be well settled by the above cases, and the numerous cases therein cited, that the contract of a person who has been judicially pronounced to be a *non compos mentis* is void. This proceeds on the ground that the inquisition and appointment of a guardian is conclusive evidence that such person is incapable of contracting, and is notice to all the world. But where a person has not been adjudged to be of unsound mind, and is apparently of sound mind, his contracts are voidable merely, and, as a sequence, are capable of ratification or disaffirmance when reason has been restored.

STORY says : " The ground upon which courts of equity now interfere, to set aside the contracts and other acts, however solemn, of persons who are idiots, lunatics, and otherwise *non compotes mentis,* is fraud. Such persons being incapable in point of capacity to enter into any valid contract, or do any valid act, every person dealing with them, knowing their incapacity, is deemed to perpetrate a meditated fraud upon them and their rights.  *  *  *  But courts of equity

deal with the subject upon the most enlightened principles, and watch with the most jealous care every attempt to deal with persons *non compotes mentis*. Wherever, from the nature of the transaction, there is not evidence of entire good faith (*uberrimæ fidei*), or the contract or other act is not seen to be just in itself, or for the benefit of these persons, courts of equity will set it aside, or make it subservient to their just rights and interests. Where, indeed, a contract is entered into with good faith, and is for the benefit of such persons, such as for necessaries, there courts. of equity will uphold it, as well as courts of law. And so, if a purchase is made in good faith, without any knowledge of the incapacity, and no advantage had been taken of the party, courts of equity will not interfere to set aside the contract, if injustice will thereby be done to the other side, and the parties cannot be placed *in statu quo*, or in the state in which they were before the purchase." 1 Story Eq. Jur. 249, 250, 251, secs. 227, 228.

In *Brown* v. *Freed*, 43 Ind. 253, we inadvertently held the deed of an insane person, where there had been no office found, void, when it should have been held voidable merely; and on this point the opinion is modified. See *Fetrow* v. *Wiseman*, 40 Ind. 148; *Law* v. *Long*, 41 Ind. 586, and authorities there cited.

The doctrine of the case of *Wilder* v. *Weakley's Estate, supra*, has no application to the present case. The two are clearly distinguishable. In that case, the contract was so far executed that the parties could not be placed *in statu quo*. In the present case, the contract is purely executory and should be governed by the general principles of law applicable to the contracts of persons of unsound mind.

We think the court erred in overruling the demurrer to the second paragraph of the reply.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to sustain the demurrer to the second paragraph of the reply, and for further proceedings in accordance with this opinion.