North-Western Mutual Fire Insurance Company *v.* Blankenship *et al.*

Filed April 16, 1884.

———————◆———————

No. 9858.

NORTH-WESTERN MUTUAL FIRE INSURANCE COMPANY *v.* BLANKENSHIP ET AL.

PRACTICE.—*Verdict and Special Answers.*—A motion for judgment in his favor, upon the general verdict and answers to interrogatories, made by the party against the general verdict, should be overruled.

INSANITY.—*Contract.*—*Mortgage by Insane Wife.*—*Disaffirmance by Heirs.*—To a suit to foreclose a mortgage executed by husband and wife, on his lands, both being then dead, the wife having survived the husband, the heirs of the wife answered that she was insane when the mortgage was executed and so continued during life, and that the mortgage was given to secure a debt of the husband. Reply: 1. That when the mortgage was executed the wife was apparently sane, and was never judicially declared insane, and never disaffirmed the mortgage; that the plaintiff had no notice of her insanity, and took the mortgage in good faith to secure a loan to the husband, and it had not been disavowed by the wife or her heirs; 2. Alleging the same facts, and, also, that after the date of the mortgage she was treated by her family as a sane person in all respects; that the loan, $6,000, was expended by the husband in the purchase of other lands; that the loan is wholly unpaid; that the husband died insolvent, and sale of the whole of the mortgaged lands will be required to repay the loan.

*Held,* that the answer was good, and both paragraphs of the reply were bad.

NEW TRIAL.—*Practice.*—Inconsistency between a general verdict and special findings is not available on motion for a new trial.

From the Owen Circuit Court.

*T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker* and *E. Daniels,* for appellant.

*G. W. Grubbs, J. H. Jordan* and *L. Ferguson,* for appellees.

BICKNELL, C. C.—The appellant brought this suit against

the widow and heirs of Perry Blankenship, to foreclose a mortgage executed by him and his wife to the appellant.

Pending the suit, the widow died. Her heirs answered the complaint, admitting the execution of the mortgage, averring that the mortgagor owned the land in fee simple; that the mortgage was made to secure his debt only, and that Mrs. Blankenship, when the mortgage was executed, was of unsound mind, incapable of making any contract, and so remained until she died. Said heirs filed, also, a cross complaint against the plaintiff, alleging the same facts, and praying that the interest which descended to Mrs. Blankenship, in the mortgaged lands, might be declared exempt from the operation of the mortgage, and that the title thereto might be quieted in said heirs.

To said answer and to said cross complaint the plaintiff filed demurrers, which were overruled.

The plaintiff replied to the answer in three paragraphs, of which the third was the general denial. The plaintiff also answered said cross complaint in three paragraphs, of which the third was a general denial.

Said heirs demurred to the first and second paragraphs of said reply, and demurred to the first and second paragraphs of said answer to the cross complaint; and said demurrers were sustained. The cause was then tried by a jury upon the complaint, the answer of the said heirs, the cross complaint of said heirs, the reply in denial of the answer, and the answer in denial of the cross complaint. The jury returned the following verdict:

"We, the jury, find in favor of the foreclosure of the mortgage in question, as against the interests in the land in question which descended to the heirs of P. M. Blankenship other than the interest which descended to Bathsheba Blankenship; and we assess the amount due on said mortgage in principal and interest at the sum of $8,023.58, and the further sum of $240.57 as solicitors' fees, and upon the plea of insanity made by the heirs of said Bathsheba, we find for them, that

the interest in said lands descending to her is not affected by the mortgage in question."

With their verdict, the jury returned the following interrogatories submitted to them on behalf of the plaintiff, and their answers thereto:

"Question 1. How much is due the plaintiff for unpaid principal and interest on the mortgage sued on? Answer. $8,023.58 (eight thousand and twenty-three dollars $\frac{58}{100}$).

"Ques. 2. How much should the plaintiff be allowed for reasonable attorneys' fees for foreclosing the mortgage? Ans. $240.57.

"Ques. 3. What additional sum should the plaintiff be allowed for attorneys' or solicitors' fees, over and above the ordinary fee for foreclosing the mortgage, on account of the litigation caused by the defence of this action? Ans. None.

"Ques. 4. Is it established by a preponderance of the evidence, that Bathsheba Blankenship was, at the time of the execution of the mortgage sued on, a person of unsound mind? Ans. Yes.

"Ques. 5. If she is thus proved to have been a person of unsound mind, when did such unsoundness of mind begin, and how long did it continue? Ans. On or about October 7th, 1871, and continued until death.

"Ques. 6. If such unsoundness of mind is proved to have existed, to how many subjects did such unsoundness of mind relate? Ans. One.

"Ques. 7. If such unsoundness of mind is proved to have existed, and related to only one or a few subjects, state or enumerate the subjects to which it did relate. Ans. Death of her son.

"Ques 8. If such unsoundness of mind is proved to have existed at the time the mortgage was executed, did such unsoundness of mind have any relation to the execution of the mortgage? Ans. No.

"Ques. 9. If such unsoundness of mind is proved to have

existed, at the time the mortgage was executed, was the mortgage the offspring of such unsoundness of mind? Ans. No.

" Ques. 10. Did Mrs. Bathsheba Blankenship, after the execution of the mortgage, remember and recognize the fact that she had executed it? Ans. No.

" Ques. 11. Is there any evidence that Mrs. Bathsheba Blankenship was ever under guardianship as a person of unsound mind? Ans. No.

" Ques. 12. Is there any evidence that any proceedings were ever commenced in court to have her declared a person of unsound mind? Ans. No."

The jury also returned with their verdict the following interrogatories submitted on behalf of the heirs of Mrs. Blankenship, and their answers thereto:

" 1. Was Bathsheba Blankenship, at the time of the execution of the mortgage in question, a person of unsound mind? Ans. She was.

" 2. Did Bathsheba Blankenship continue to be a person of unsound mind until the day of her death? Ans. She did."

Upon the return of the verdict, interrogatories and answers, the plaintiff moved as follows:

" Now here comes the plaintiff and moves the court, upon the general verdict and the special findings of the jury in answer to interrogatories, to render a decree in this cause finding that there is due to the plaintiff on the foot of the mortgage sued on $8,023.58, and providing that, if said sum is not paid into court, together with the costs of suit, within ten days, or such other time as the court may appoint, with interest at six per cent. per annum from this date, on said sum of $8,023.58, all the real estate, conveyed and mortgaged by the mortgage sued on, shall be sold without relief from valuation or appraisement laws, as lands are sold on execution, and that the proceeds of such sale shall be applied first to the payment of the costs of this suit, and then to the payment to the plaintiff of said sum of $8,023.58, and interest aforesaid, and that, by the decree so to be entered, the equity

of redemption of all the defendants to this suit may, from and after the sale of the mortgaged premises, be forever barred and foreclosed as to all of the defendants, except only as to the statutory right of redemption from such sale within one year from the day of sale."

This motion was overruled by the court, and judgment was rendered upon the general verdict as follows:

" It is ordered, adjudged and decreed that the following real estate, situated in Morgan county, Indiana, and described in the mortgage sought to be foreclosed in this action, owned by the said Bathsheba Blankenship in her lifetime, is not liable to be sold under the decree of foreclosure to be rendered in favor of the plaintiff herein, but is hereby decreed to be exempt from sale to pay the said sum so found by the jury to be due the plaintiff on the foot of its mortgage; which said tract of land is described as follows:" Then follows a description of said land, and a decree quieting the title thereto of the heirs of Bathsheba Blankenship, and awarding costs to them against the plaintiff, and foreclosing the mortgage as to all the other land mentioned therein, and ordering that the same be sold, and the proceeds applied in payment of the costs of the suit, except those decreed against the plaintiff, and then to the payment of the mortgage debt and interest.

The plaintiff excepted to that part of the judgment which exempted the land owned by Bathsheba Blankenship in her lifetime, and quieted the title thereto in her heirs, and decreed costs in favor of said heirs against the plaintiff.

The plaintiff moved for a new trial. This motion was overruled. The plaintiff appealed, assigning the following errors:

1. Overruling the appellant's motion for judgment on the general verdict, and on the special findings of the jury in answer to special interrogatories, for the amount found by said general verdict, and for the sale of all the mortgaged premises conveyed by the mortgage sought to be foreclosed, and

for the application of the proceeds of the sale to the satisfaction of such judgment.

2. In rendering the decree set out by the record instead of rendering the one so moved for as aforesaid by the plaintiff.

3. In sustaining the demurrer of said heirs to the first paragraph of the appellant's answer to the cross complaint of said heirs.

4. In sustaining the demurrer of said heirs to the second paragraph of appellant's answer to said cross complaint.

5. In sustaining the demurrer of said heirs to the first paragraph of the plaintiff's reply to their answer.

6. In sustaining the demurrer of said heirs to the second paragraph of the plaintiff's reply to their answer.

7. In overruling the motion for a new trial.

The first and second of these alleged errors may be considered together.

Where the special findings are inconsistent with the general verdict, the proper motion is for judgment upon the findings notwithstanding the verdict; where the special findings support the verdict, or are not irreconcilably inconsistent therewith, the judgment is rendered upon the verdict; where the findings are in conflict with each other, judgment must be rendered on the verdict. *Byram* v. *Galbraith,* 75 Ind. 134; *Indianapolis, etc., R. R. Co.* v. *McCaffrey,* 62 Ind. 552; *Scheible* v. *Law,* 65 Ind. 332.

The motion here was not for judgment upon the special findings notwithstanding the verdict; it was for "judgment for the plaintiff on the general verdict and on the special findings." There was no error in overruling that motion; such a motion is not authorized by the statutes. R. S. 1881, sections 546, 547.

The only reason for a judgment on the special findings is that they are contrary to, and, therefore, control the general verdict; but here the motion was for judgment upon both. In such a case, it was proper to render judgment upon the general verdict. *Mitchell* v. *Geisendorff,* 44 Ind. 358.

The plaintiff's counsel, in their brief, say, that " the third, fourth, fifth and sixth assignments of error are intended to present the same question, and may be considered together."

Upon the statement in the first paragraph of the answer of Mrs. Blankenship's heirs, the presumption is that she was never judicially declared to be of unsound mind. *Hardenbrook* v. *Sherwood,* 72 Ind. 403. Her mortgage, therefore, was not void but voidable; but the answer shows that she had no power to disaffirm it, because her disability lasted all her lifetime; her heirs, therefore, in an action against them to enforce the mortgage, could take advantage of such a continuing disability, disaffirm the contract and have the mortgage avoided. *Somers* v. *Pumphrey,* 24 Ind. 231; *McClain* v. *Davis,* 77 Ind. 419; *Musselman* v. *Cravens,* 47 Ind. 1; *Freed* v. *Brown,* 55 Ind. 310; *Wray* v. *Chandler,* 64 Ind. 146; *Hardenbrook* v. *Sherwood, supra.* Under these authorities the answer presented a good defence. No error, however, is assigned upon the overruling of the demurrer to this answer, nor upon the overruling of the demurrer to the cross complaint.

The first paragraph of the plaintiff's reply to said answer avers that Mrs. Blankenship, before and at the time the mortgage was executed, was apparently a person of sound mind, and had never been judicially declared to be insane or placed under guardianship, and was never afterwards so declared; that plaintiff took the mortgage in good faith, in the ordinary course of business, to secure its loan to Perry Blankenship, having no knowledge, information, belief or suspicion that she was of unsound mind; that she, in her life, never attempted to disaffirm the mortgage, and that her heirs have made no such effort, except the filing of said answer.

The second paragraph of plaintiff's reply to said answer avers the same facts as the first paragraph, and, also, that Perry Blankenship and his family, at and before and after the date of the execution of the mortgage, treated Mrs. Blankenship as a person of sound mind, allowed her to go unattended, and

to transact such business, including joining with her husband in conveyances of land, as married women of sound mind, in her station in life, are accustomed to transact; that said Perry expended the $6,000 loaned to him upon said mortgage in the purchase of other real estate, while Mrs. Blankenship was his wife; that none of said money has been refunded to the plaintiff; nor has plaintiff been in any way restored to the position it held before said mortgage and loan were made; that said Perry, although solvent at the date of the mortgage, died insolvent, and that the sale of all the mortgaged property will be required to pay the mortgage debt.

In *Somers* v. *Pumphrey, supra,* Elizabeth Somers had made a deed of land to plaintiffs, her heirs at law, to whom the land descended, brought the suit to set aside the deed, alleging that their ancestress, when she executed it, was of unsound mind. The plaintiffs in that suit occupied substantially the same position as the defendants in this; they were heirs seeking to avoid the contract of their ancestress because of her insanity. The defendants in that case had asked the court below for the following instruction : "That if the defendants held the land in controversy by deed from Golvin Somers, and paid him a valuable consideration for it, not knowing, at the time of their purchase, that the said Elizabeth Somers was of unsound mind at the time she executed the deed to Stineman, * * the plaintiffs can not recover."

This court held that said instruction was correctly refused, and said: "The authorities are not uniform as to the effect, in various cases, that may be given to the contracts of persons who are of unsound mind at the time of making them. The general rule, however, applicable to contracts of the character of that under discussion here, seems to be settled, that such contracts may be avoided, either by the persons themselves, or their legal representatives."

The court also said that the case seemed to be analogous to the contract of an infant, and cited the case of *Doe* v. *Abernathy,* 7 Blackf. 442, where it was held that an infant's deed

## NOVEMBER TERM, 1883. 543

North-Western Mutual Fire Insurance Company v. Blankenship et al.

might be avoided by his heirs, although the land had passed into the hands of a *bona fide* purchaser for a valuable consideration.

In the case of *McClain* v. *Davis, supra,* where the application to avoid the contract was made by the guardian of the insane person, this court said: "The duly appointed guardian may, of course, exercise the right of disaffirmance. There was nothing received, * * of which it can be said that restitution should be made. * * Commercial paper is not an exception to the rule which permits a disaffirmance by any one who was of unsound mind at the time of becoming a party thereto. The purchaser of such paper takes with constructive notice of all legal disabilities of the parties, such as infancy, coverture, and unsoundness of mind."

In *Musselman* v. *Cravens, supra,* where the action was upon a note, and the defence was the insanity of the maker, the reply was, that the maker was apparently of sound mind and not known by the payees to be otherwise; that he had recently been adjudged sane by a jury; that the note was a subscription to build a college, and that the payees, on the faith of it, had incurred debts and liabilities, and could not now be placed *in statu quo,* it was held that this reply was not sufficient. This case was decided in 1874.

The case of *Harbison* v. *Lemon,* 3 Blackf. 51 (23 Am. Dec. 376), was a bill to foreclose a mortgage, brought against the heirs of the mortgagor. The defence was the incapacity of the ancestor to make a contract. The court said: "It is not the mortgagor himself, but his heirs, that are the defendants in this case; and it was never denied but that the heirs might avoid the bond of their ancestor, on the ground of his incapacity to contract. Co. Litt. 247; *Beverley's Case,* 4 Co. Rep. 123."

The fundamental principle of the law on this subject is that, assent being essential to a contract, a man incapable of assent is incapable of contracting. The cases heretofore cited show that, as a general rule, some exceptions to which will

be presently stated, when a contract is made by an insane person who remains insane continually thereafter until his death, and an action is then brought against his heirs to enforce it, they may by a proper pleading disaffirm the contract, and that it is not a good reply to such a pleading, that the party was apparently of sound mind; nor that he had not been judicially declared insane; nor that the other party contracted in good faith, and without suspicion of insanity, nor that no previous effort had been made to disaffirm the contract; nor that the family of the insane person had permitted him to go unattended and transact ordinary business.

Where an insane wife has joined in a mortgage of her husband's lands to secure his debt, it is not a good answer to such a pleading, as aforesaid, that she and her heirs have never refunded money which she never received, and have done nothing to place the other party *in statu quo.*

The paragraphs of the answer to the cross complaint, and of the reply to the answer in this case, were pleaded together with general denials; if any of the facts alleged tended to show that Mrs. Blankenship was not insane, they could have been given in evidence under the general denial. There was no error in sustaining the demurrers to the first and second paragraphs of the plaintiff's reply to the answer of the heirs. And there was, for the same reasons, no error in sustaining the demurrers to the first and second paragraphs of the plaintiff's answer to the cross complaint of said heirs.

The general rule is that a contract made by a person of unsound mind may be disaffirmed by him or by his representatives. But in modern times this rule has been subject to an exception in cases where the consideration of the contract is fair, and has actually been received and used by the lunatic, the other party honestly dealing with him as a sane man, and having no knowledge of the unsoundness of mind.

This exception was first recognized at common law in the case of *Bagster* v. *Earl of Portsmouth,* 7 Dow. & Ry. 614, where a tradesman having furnished necessaries to a lunatic,

without being aware of his infirmity, was permitted to re-cover their value.

The exception has been extended to cases where the arti-cles received and used by the lunatic were not actually nec-essaries, although beneficial to the lunatic; but where nothing is received by the lunatic the reason for such exception does not exist.

It was held in *Wilder* v. *Weakley*, 34 Ind. 181, that where goods are sold to a person apparently of sound mind, who is not known by the seller to be otherwise, and has not been judicially declared to be of unsound mind, and the con-tract is fair and *the lunatic receives and uses the goods*, there is no reason in law or sound morals why he, or his estate, should not pay what the goods are reasonably worth. The difference, however, between such a case and the case at bar is mani-fest. See *Musselman* v. *Cravens, supra.*

The real ground of the exception under consideration is that where a lunatic has actually had the use of the entire consideration of his contract, he ought to pay for it. In Story's Equity Jurisprudence, sections 227, 228, the statement is: " So, if a purchase is made in good faith, without any knowledge of the incapacity, and no advantage had been taken of the party, courts of equity will not interfere."

In Chitty on Contracts (11th ed.), 191, it is said: " In like manner, it has been decided, that where a person apparently of sound mind, * * enters into a contract for the purchase of property, * * and the subject-matter of the contract has been paid for and fully enjoyed," etc., " such contract can not be set aside, either by the alleged lunatic, or by those who represent him."

In Addison on Contracts, p. 149, the principle is thus stated: "An action for the price of goods sold and de-livered, or of work done, or for the hire of horses, carriages, or servants, can not be defeated," etc., "for the law will not permit the lunatic's infirmity to be made an instrument of fraud."

The theory of these elementary writers is that where the lunatic has received and had the benefit, the contract being fair, and made *bona fide,* without knowledge of the lunacy by the other party, it would be unconscionable to refuse to enforce it.

So, in *Fay* v. *Burditt,* 81 Ind. 433 (43 Am. R. 142), the same principle was held to apply where the lunatic, being a farmer, had rented and enjoyed the use of a farm for a year, and had given his note for the rent. It was there held that the court below had properly charged the jury that the voidable contracts of insane persons not under guardianship will be enforced or not enforced by courts, according to the circumstances of the case. There is no analogy between any of the foregoing excepted cases and the case at bar. Here nothing was received by the insane woman, and it would be inequitable to hold her bound by a mortgage executed for the sole benefit of her husband, she having no contracting mind. The insane are under the protection of courts, and ought not to be bound by contracts not beneficial to them, to which they never assented and could not assent. The case of *Fay* v. *Burditt, supra,* was rightly decided. The points there decided were: 1. That the contracts of an insane person, not judicially declared to be such, are voidable and not void. 2. That the plaintiff ought to recover on a note given by such a lunatic, being a farmer, for the rent of a farm used and occupied by him for the support of himself and family, he having been apparently of sound mind, and his unsoundness not being known to the other party, and the contract being fair.

The case was clearly within the exceptions. But the following language appears in the opinion rendered in *Fay* v. *Burditt, supra,* to wit: " It is manifest that a person of unsound mind, whose incapacity has not been judicially determined, can not, with a due regard to the rights of others, be permitted, like an infant (except as to necessaries) or a married woman, to exercise the privilege of disaffirming his con--

tracts, irrespective of their character and the circumstances under which they were made.    Every person may well be on his guard as to whether he is dealing with a married woman, or an infant; but not so as to the insane who afford no outward sign of their incapacity."

This language was not necessary for the points decided, and was not in accordance with previous rulings of this court.

In *Somers* v. *Pumphrey, supra,* on page 238, this court said: " If the person is *non compos mentis,* there is a want of capacity to contract; he does not, in a legal sense, consent, because there is a want of that mental capacity essential to a legal consent.    In this respect, the case seems analogous to the contract of an infant, * * and it has been held that a deed made by an infant might be avoided by his heirs, though the estate had passed into the hands of a *bona fide* purchaser, for a valuable consideration.    *Doe* v. *Abernathy,* 7 Blackf. 442."

In *McClain* v. *Davis, supra,* this court said: " The purchaser of such paper takes with constructive notice of all legal disabilities of the parties, such as infancy, coverture, and unsoundness of mind."

It was well said by the learned judge who delivered the opinion in *Fay* v. *Burditt, supra,* " These subjects, however, must be regarded as open for further consideration, as the questions may arise.    They are not directly involved here."

The latest case in relation to the exception now under consideration is *Copenrath* v. *Kienby,* 83 Ind. 18.    It was there held, in accordance with the cases hereinbefore referred to, that it was a good reply to an answer of insanity pleaded by the mortgagor in a foreclosure suit, that the mortgage was given to secure the repayment of money obtained for the use and benefit of the mortgagor, and which was used and applied for his benefit in payment of a *bona fide* debt, and that the mortgagee lent the mortgagor money and took said mortgage *bona fide* without knowledge of such insanity.    But further it may be observed that Mrs. Blankenship occupied

a position closely analogous to that of a surety. *Leary* v. *Shaffer*, 79 Ind. 567; *Grave* v. *Bunch*, 83 Ind. 4.

Occupying such a position, and being also insane, she was eminently entitled to the protection of the court, and her rights ought to be enforced in favor of her heirs.

The seventh and last error assigned is overruling the motion for a new trial.

The reasons assigned for a new trial are:

1. The verdict is contrary to law.

2. The verdict is not supported by, but is contrary to, the evidence.

3. The verdict is inconsistent with the special findings in answer to plaintiff's interrogatories.

The question as to inconsistency between the verdict and the special findings is not presented by a motion for a new trial. *Stockton* v. *Stockton*, 40 Ind. 225. It can be presented only by a motion for judgment upon the special findings, and by an assignment of error upon the overruling of such motion. *Horn* v. *Eberhart*, 17 Ind. 118; *Byram* v. *Galbraith*, *supra*. A motion for judgment upon part of the special findings only, or upon the answers to the interrogatories of one only of the parties, when there are answers to interrogatories of other parties, can not prevail. *Byram* v. *Galbraith*, *supra*. Such inconsistency between the verdict and the special findings is not presented by the first and second reasons alleged for a new trial. *Horn* v. *Eberhart, supra*.

Where, as in this case, the evidence is not in the record, no question as to the evidence is presented by the motion for a new trial. *Williams* v. *Potter*, 72 Ind. 354; *Kerwin* v. *Myers*, 71 Ind. 359; *Early* v. *Hamilton*, 75 Ind. 376.

The verdict was not contrary to law, and there was no error in overruling the motion for a new trial, and there is no available error in the record.

The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing

opinion, that the judgment of the court below be and it is hereby in all things affirmed, at the costs of the appellant.

Filed Jan. 3, 1884. Petition for a rehearing overruled April 17, 1884,