KATE V. DOTY and JOHN DOTY, by FRED Mc-WETHY, His Guardian, v. A. F. MUMMA, Appellant.

Division One, July 31, 1924.

1. **RESCISSION:** Negotiable Instruments: Statu Quo: Insane Surety: Fraud. Suit was brought by a husband and wife to rescind negotiable notes given as the purchase price of a garage bought by the wife. It is alleged that the husband was insane at the time he signed the notes. He was not a party to the sale and received no benefit of any kind therefrom. Judgment was rendered in favor of defendant against the wife for the amount of the notes, and in favor of the plaintiff husband, and defendant, the payee of the notes, alone appeals. *Held*, that it is unnecessary to consider the issue that the sale was induced by the fraudulent misrepresentations made by defendant to the wife, since the trial court found against her and she has not appealed; neither is it necessary to consider whether an attempted rescission of the sale at the time it was tendered would have put the parties *in statu quo*, because the husband was not a party to the contract of sale; but the naked questions for consideration are whether the husband had sufficient mental capacity to contract as surety, and if not, whether his contract can be avoided on that ground, regardless of the good faith of the principals and regardless of whether upon a rescission as between them they could be placed *in statu quo*.

2. ———: ———: **Evidence to Establish Insanity.** Evidence that the husband, at the time he signed the notes given as the purchase price of a garage bought by his wife, did not have the ability to comprehend the character of the act in which he was engaged, its scope and effect, or its nature and consequences, establishes that he did not have mental capacity to make such a contract.

3. ———: ———: **Insane Surety: Avoidance of Contract: Statu Quo: Exception.** Where a contract with an insane person has been en-

tered into in good faith, without fraud or imposition, for a fair consideration, without notice of his infirmity and before an adjudication of his insanity, and has been executed in whole or in part, it will not ordinarily be set aside, and in no event unless the parties can be restored to their original positions. But this rule that the bona-fide contract of an insane person is voidable only when the parties can be placed *in statu quo* is subject to the exception that, where the insane person has not received the benefit of the consideration, the contract will be set aside without a return of the consideration, although it was made in good faith before an adjudication of insanity.

Headnote 1: Appeal and Error, 4 C. J., sec. 2594, Headnotes 2 and 3: Insane Persons, 32 C. J. secs. 642, 540.

Appeal from Johnson Circuit Court.—*Hon. C. A. Calvird,* Judge.

AFFIRMED.

*John H. Lucas, William C. Lucas* and *W. E. Suddath* for appellant.

Under the pleadings and the proof, respondent John Doty, by his guardian, was not entitled to the relief prayed for by him, but appellant was entitled to a judment against him for the full amount of the two notes. 22 Cyc. 1175, 1206, 1241; 32 Corpus Juris, 727-1133; 14 R. C. L. pp. 583, 584; McKenzie v. Donnell, 151 Mo. 455; McAnaw v. Clark, 167 Mo. 446; Jamison v. Culligan, 151 Mo. 410; Hill-Dodge v. Loomis, 140 Mo. App. 62. (1) The sanity and competency of a party to a contract are universally presumed in the absence of evidence to the contrary. 36 L. R. A. 723, note (C); Covender v. Waddingham, 5 Mo. App. 457; Knight v. Knight, 113 Ala. 597. (2) An inquisition finding that a person is incompetent at the time of the finding has been held to afford no evidence that he was incompetent at a previous time and raises no presumption of any character of incompetency at an earlier date. 22 Cyc. 1133; Lilly v. Wagner, 27 Ill. 395; Small v. Champeny, 102 Wis. 61; Westerland v. National Bank, 7 A. L. R. 562; Southern Life Relief Assn. v. Laudenbach, 5 N. Y. Supp. 901; Ripley v. Gant, 39 N. C. 433. (3) The

test of mental capacity to contract is whether the person possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which he is engaged; and in order to avoid a contract, it must appear not only that the party was of unsound mind or insane when it was made, but that the unsoundness or insanity was of such a character that he had no reasonable perception or understanding of the nature and terms of the contract. 32 Cyc. 727; 22 Cyc. 1206; 14 R. C. L. p. 583; Cutler v. Zollinger, 117 Mo. 92. (4) The burden of proof rests with a person seeking to avoid the consequences of his own conduct and to charge another with liability for a result to which said conduct contributed to show that he was not responsible for his own act and that the other was under the duty of dealing with him as a person incompetent to care for himself. See State v. Scott, 36 L. R. A. 721, and note on page 731.

*Nick M. Bradley* for respondents.

(1) The evidence is uncontradicted that John Doty was insane at the time of the alleged tran:action and had not mental capacity to comprehend the nature and effect of the contract. (2) The evidence is uncontradicted that John Doty was not a party to the contract in question, that neither he nor his estate received any benefit from the trade, that he signed the notes as surety. He should therefore have an affirmance of the judgment. 22 Cyc. 1205; Wooley v. Gains, 114 Ga. 122; Physio-Medical College v. Wilkinson, 108 Ind. 314; Van Platten v. Beals, 46 Iowa, 62; Lincoln v. Buckmaster, 32 Vt. 652; Musselman v. Cravens, 47 Ind. 1; 32 Corpus Juris, p. 746. (3) If respondent is not sustained in his position stated under Point 2, he must be sustained if appellant had notice of John Doty's incapacity, or of such facts and circumstances from which such knowledge is presumed, or if he failed to give him a fair consideration for what he received. 32 Corpus Juris, pp. 746, 747, secs. 537, 540, and

notes; McKenzie v. Donnell, 151 Mo. 461; Jamison v. Culligan, 151 Mo. 410; Wells v. Mutual Benefit Assn., 126 Mo. 637.

RAGLAND, J.—This is a suit to cancel two notes given for the purchase price in part of certain personal property, on the ground that the sale was induced by fraud, and on the further ground that one of the makers of the notes was at the time of their execution insane. The answer of defendant admitted the execution of the notes, but denied the allegations of the petition with respect to fraud and insanity. By way of cross-action he asked judgment on the notes.

The facts are not complicated. Plaintiff, Kate V. Doty, her husband, John Doty, and their married daughter and her husband, one Baker, lived together in the town of Holden in Johnson County. Defendant was conducting an automobile-sales and garage business there. Baker was an automobile mechanic; he having heard that defendant's garage and business were for sale reported that fact to his mother-in-law. She sent him to ascertain the price and terms. Following Baker's visit, Mrs. Doty went to see defendant and the terms of a sale were speedily agreed upon between them. The property consisted of four used automobiles, a small lot of tires and accessories, and a gas tank and pump. For this she was to pay $7138, two hundred dollars in cash and the remainder in two equal payments, one in three and the other in six months. Bankable notes were to be given for the deferred payments. A bill of sale and notes conformable to the terms of sale were immediately prepared. He signed the bill of sale and she the notes, but he declined to take the notes without security. He indicated that he would accept them if they were signed by Mr. Doty. Thereupon Baker was given the notes and told to have Doty sign them. Presently Baker returned with the notes bearing Doty's signature. They and Mrs. Doty's check were delivered to defendant; and the bill of sale and pos-

session of the building containing the property sold were delivered to Mrs. Doty. She at once turned the management and control over to her son-in-law. These transactions occurred March 8, 1920. Two or three weeks later John Doty was duly adjudged to be a person of unsound mind by the Probate Court of Johnson County, and a guardian was appointed for him. At the guardian's instance the property theretofore sold Mrs. Doty was tendered to defendant and a demand was made upon him for the return of the money and notes she had given him therefor. Upon his refusal to rescind, this proceeding was commenced, May 1, 1920.

In July, 1912, John Doty and C. F. Scarcliff formed a partnership and bought a stock of hardware at Holden. The business of selling hardware at retail was thereafter conducted by Scarcliff in the firm name of Scarcliff & Doty until a few days before Mrs. Doty bought defendant's garage, when it was sold. A stock of approximately $40,000 in value was carried and the business was prosperous. In the latter part of 1912, Doty received a blow on the head which caused a fracture of the skull. For a period of five or six years next preceding the trial of this cause he was never away from his home but one time, and that was when he was put into an automobile and taken to Warrensburg for the purpose of having him present at the inquiry into his sanity. During the period just mentioned it was impossible to persuade or cajole him into leaving his home for any purpose. Mrs. Doty was compelled to buy his clothes for him, and a dentist had to be sent to the house to treat his teeth. He withdrew as far as he could from association with other members of his family, did not talk to them, cooked his own meals and spent a large part of his time in the yard, walking back and forth. When spoken to he answered rationally enough about ordinary affairs, but when a business matter was broached, his mind apparently became a blank. Anything relating to a business transaction seemed utterly incomprehensible to him. Nothing had ever been said to

him about the purchase of the garage prior to the time he signed the notes in controversy. Baker went to him and said, "Mrs. Doty has bought a garage and wants you to sign these notes." He signed them and walked away without exchanging a word.

The evidence does not show that defendant at the time he accepted the notes signed by John Doty had any knowledge of the latter's mental condition, or of any fact or circumstance that would put him on inquiry with respect thereto.

The trial court found the issues for the defendant and against the plaintiff Kate V. Doty, and gave judgment against her for the sum of $7766.49, but found the issues for the plaintiff John Doty. Defendant alone appealed.

The evidence with respect to fraudulent representations has not been summarized because the trial court in finding against plaintiff, Kate V. Doty, necessarily found for appellant on that issue. Nor is it necessary to consider whether a rescission of the sale at the time it was tendered would have put the parties *in statu quo,* because the plaintiff John Doty was not a party to the contract of sale and received no benefit of any kind or character therefrom. The naked questions presented are whether John Doty had sufficient mental capacity to contract as surety; and, if not, whether his contract may be avoided on that ground, regardless of the good faith of the principals and regardless of whether upon a rescission as between them they could be placed *in statu quo.*

With respect to the first, the evidence all but conclusively shows that Doty, when he signed the notes, did not have the ability to comprehend the character of the act in which he was engaged, its scope and effect, or its nature and consequences. Consequently his mental incapacity to make such contract was clearly established.

As to the second, it is undoubtedly the rule that where a contract with an insane person has been entered into in good faith, without fraud or imposition, for a fair

305 Mo.—13.

consideration, without notice of the infirmity, and before an adjudication of insanity, and has been executed in whole or in part, it will ordinarily not be set aside, and in no event unless the parties can be restored to their original positions. [Wells v. Benefit Assn., 126 Mo. 630; Rhoades v. Fuller, 139 Mo. 179; McKenzie v. Donnell, 151 Mo. 455; Bruner v. Johnston, 228 S. W. 92; Hill-Dodge Banking Co. v. Loomis, 140 Mo. App. 62.] But the rule that the bona-fide contract of an insane person is voidable only where the parties can be placed *in statu quo* is subject to the exception that where the insane person has not received the benefit of the consideration the contract will be set aside without a return of the consideration although it was made in good faith, before an adjudication of insanity. [Northwestern Mutual Fire Ins. Co. v. Blankenship, 94 Ind. 535; Wirebach v. Bank, 97 Pa. St. 543; Jordan v. Kirkpatrick, 251 Ill. 116; Van Patton v. Beals, 46 Iowa, 62.] The policy underlying both the rule and the exception finds expression in an early Vermont case Lincoln v. Buckmaster, 32 Vt. 657, at page 658, as follows:

"But notwithstanding this incapacity to make contracts, the law recognizes many legal obligations, which for his own benefit, or that of others connected with and dependent upon him, or from considerations of policy, the lunatic may assume, and which will form the basis of an action, in the courts of law and equity. But we shall find that this is allowed chiefly for the protection and support of the lunatic, or his family, or to prevent serious injustice to those who have dealt with him, having no means of knowing or learning his incapacity. But this is never done to the wrong and injury of the lunatic. His mental infirmity is a full protection against all injustice, but it cannot be made the occasion of inflicting injustice upon others, who are without fault, unless that result is necessary to protect the rights of the insane person. [Pollock, Ch. B., in Gire v. Gibson, 13 M. & W. 625.]"

In Northwestern Mutual Fire Insurance Co. v. Blankenship, supra, at page 546, it was said:

"The theory of these elementary writers is that where the lunatic has received and had the benefit, the contract being fair, and made bona-fide, without knowledge of the lunacy of the other party, it would be unconscionable to refuse to enforce it. . . . Here nothing was received by the insane woman, and it would be inequitable to hold her bound by a mortgage executed for the sole benefit of her husband, she having no contracting mind. The insane are under the protection of courts, and ought not to be bound by contracts not beneficial to them, to which they never assented and could not assent."

The facts of the instant case bring it squarely within the exception hereinbefore noted. The trial court therefore properly held that Doty's contract as surety could be disaffirmed by his guardian.

It follows that the judgment appealed from should be affirmed. It is so ordered. All concur.